165 So. 449

**STATE v. COHN.**

No. 33206.

Jan. 6, 1936.

Charles J. Rivet, of New Orleans, for the State.

Richard A. Dowling, of New Orleans, for appellee.

HIGGINS, Justice.

The state of Louisiana instituted this proceeding against the defendant for an occupational license tax for the years 1932, 1933, and 1934, alleging that she was engaged in the city of New Orleans in the profession of "beauty specialist." The de-

fendant pleaded that she was exempt from such a tax, under the express provisions of the Constitution of this state. There was judgment dismissing the suit, and the state has appealed.

The stipulation between counsel for the parties reads as follows:

"It is admitted that Madeline Cohn, defendant in rule, is engaged in the practice of cosmetic therapy as defined in Act No. 135 of 1924 as amended by Act No. 245 of 1928, and as such personally performs all the functions and makes use of the paraphernalia mentioned in said act. It is further admitted that said Madeline Cohn has no assistants.

"It is further admitted that said defendant in rule contended that the calling in which she is engaged is not subject to the payment of license taxes and attacked the legality of the tax insofar as it applied to the calling of Cosmetic Therapy because in violation of the mechanical pursuit clause contained in section 8 of article 10 of the Constitution of 1921; that the trial court sustained this contention, and dismissed the rule."

Section 8 of article 10 of the Constitution of Louisiana of 1921, reads as follows:

"Section 8. License taxes may be levied on such classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper, except clerks, *laborers,* ministers of religion, school teachers, graduated trained nurses, *those engaged in mechanical,* agricultural, or horticultural *pursuits* or in operating saw mills."

Section 1 of Act No. 135 of 1924, describes the kind of calling in which defendant is engaged as "Cosmetic Therapy or Beauty Culture and Hairdressing," and forbids persons to engage therein "unless they shall have been licensed to practice such profession."

Section 1 of Act No. 245 of 1928 (amending Act No. 135 of 1924, § 2) creates a "Board of Control of Cosmetic Therapy," composed of four members, as a body politic, with power to sue and be sued and to make certain rules and regulations.

Section 3 of the statute (as amended by Act No. 245 of 1928, § 2), provides that a person of either sex is eligible to register as a practitioner, who is 18 years of age, who is of good moral character, who has an education equivalent to the first year of an approved high school, who has completed a course of study from a school of cosmetic therapy, approved by the board of control, or has worked one year under a regular qualified cosmetician, and who has passed a satisfactory examination conducted by the board of control.

Section 4 of the act (as amended by Act No. 245 of 1928, § 3) enumerates the requirements before one may become a registered apprentice.

Section 7 (as amended by Act No. 245 of 1928, § 6) states that a school of training in the vocation of cosmetic therapy or beauty culture must be registered and licensed by the board of control; that the school must be in charge and under the

supervision of a licensed cosmetician, who has had three years' experience and special teacher's training; that the course of "practical training and technical instruction extending over a period of six consecutive months, to include not less than 1,000 hours, such course of study to include lectures, discussions, instruction and mechanical application."

Section 18 of the act (as amended by Act No. 245 of 1928, § 8) defines "Cosmetic Therapy" as follows:

"The systematic stroking, kneading, slapping, tapping or manipulations by hand or mechanical or electrical apparatus, of the hands, arms, face, scalp, also electrolysis by the use of electricity for cosmetic purposes and not for the treatment of disease or the practice of surgery, or for the removal of any part of the skin or body except under medical supervision, also the use of creams, lotions, clays or other materials used in the practice of Cosmetic Therapy or Beauty Culture, hair tinting and dyeing, marceling, permanent waving, round curling, and the disposition of such articles usually carried in beauty shops for beautifying and adornment."

The above statute is enacted under the general police power of the state, to protect the health and welfare of the public. The state's right to enact such legislation is not questioned, but the right under the taxing power of the state to levy and collect a license tax from the defendant is challenged, because of the constitutional exemption contained in article 10, § 8, of the Constitution of 1921.

■ We have quoted the legislative definition of "Cosmetic Therapy" which is classified as professional. It is clear that the Legislature cannot by a mere definition change a calling which falls in the category of a mechanical pursuit and classify it as a profession in order to subject those engaged therein to a license tax. This would be a plain violation of the constitutional limitation. We shall therefore have to determine what are the accepted definitions of the word "profession" and the phrase "mechanical pursuit." We quote from several of the recognized lexicographers, as follows:

"Profession" (50 C.J. 637):

"Very generally the term is employed as referring to a calling in which one professes to have acquired some special knowledge, used by way of instructing, guiding, or advising others or of serving them in some art; and employment, especially an employment requiring a learned education; an occupation that properly involves a liberal education or its equivalent and mental, rather than manual, labor, especially one of the three learned professions; any calling or occupation involving special mental and other attainments or special discipline, as editing, acting, engineering, authorship. The word implies professed attainments in special knowledge as distinguished from mere skill; intellectual skill as distinguished from that used in an occupation for the production or sale of commodities; * * *"

"Profession" (Funk & Wagnalls' Standard Dictionary):

"An occupation that involves a liberal education, and mental rather than manual labor."

"Profession" (Oxford English Dictionary):

"The occupation which one professes to be skilled in and to follow; a vocation in which a professed knowledge of some department of learning or science is used in its application to the affairs of others, or in the practice of an art founded upon it. Applied specifically to the three learned professions—divinity, law and medicine."

"Profession" (Ballentine's Law Dictionary):

"A vocation in which a professed knowledge of some department of science or learning is used by its practical application to the affairs of others, either in advising, guiding, or teaching them, or in serving their interests or welfare in the practice of an art founded on it. Formerly, theology, law and medicine were specifically known as "the professions" but as the applications of science and learning are extended to other departments of affairs, other vocations also receive the name. *The word implies professed attainments in special knowledge as distinguished from mere skill.* A practical dealing with affairs as distinguished from mere study or investigation; and an application of such knowledge to uses for others as a vocation, as distinguished from its pursuits for its own purposes." (Italics ours.)

"Mechanical pursuit" is defined in Ballentine's Law Dictionary as:

"A business, calling, or occupation which cannot be utilized unless resort is had to the use of some machinery or instrument of force, or appliance of power, in aid of manual work, in some physical undertaking, in which the intervention or interaction of a superior mind is not required. *That is, the occupation must be one by which the object realized is not dependent for its confection on the exertion of a controlling intellect, but rather on the adaptation of some helping mechanism, or use of some auxiliary tool or instrument.* See City of New Orleans v. Robira, 42 La. Ann. 1098, 8 So. 402, 11 L.R.A. 141." (Italics ours.)

In the case of City of New Orleans v. Robira, 42 La.Ann. 1098, 8 So. 402, 11 L.R.A. 141, where a photographer claimed exemption from license tax under the "mechanical pursuit clause" of the Constitution, this court said:

"The object of the framers of the organic law was, primarily, to render liable to a license tax all persons, associations of persons, and corporations pursuing any trade, profession, business, or calling; but they at once perceived that, unless some restriction or qualification was provided for, many would be subjected to the burden who should not be so equitably, as being worthy of special encouragement and protection. Hence they excepted from the operation of the clause clerks, *laborers,* clergymen, school-teachers, *those engaged in mechanical,* agricultural, and *mining pursuits,* and a certain class of manufacturers.

"Strictly, the language invoked means the following of an occupation by one

who performs acts which are purely mechanical, that is, which could be done by a machine or a regulated physical agent of power.

"The term *'mechanical'* is employed to indicate that the business, calling, or occupation in view must be one which cannot be utilized unless resort is had to the use of some machinery, or instrument of force, or appliance of power, in aid of manual work, in some physical undertaking, *in which the intervention or interaction of a superior mind is not required; in other words, the expression means that the occupation must be one by which the object realized is not dependent for its confection on the exertion of a controlling intellect, but rather on the adaptation of some helping mechanism, or use of some auxiliary tool or instrument.* * * *

"A useful or mechanical art is that in which the hands and body are more concerned than the brain. * * *

"The record contains an elaborate statement or scientific description of the various processes followed in the making of pictures by photography. * * *

"It is impossible to read it, and give the matter a moment's reflection, without remaining under the irresistible impression that quite exceptional knowledge and skill are required to understand the apparatus and the modus operandi, and to operate with it and its accessories. It takes special aptitudes to understand all that has to be known regarding the camera, the lenses, the adjusting screws, the sensitized plates, the posing of the subject, the arrangement of the light, the adjustment of the camera,

the insertion of the plate-holder, the exposure of the plate, the reflection of the rays of light on the subject, the concentration of the lenses to a focus on the plate, the chemical changes in the substance spread on the plate, the resulting image, the subsequent transfer of the plate to the dark chamber, for development and fixation by chemical process. * * *

"It is worthy of note that it is not pretended that all this is accomplished by the spontaneous action of the apparatus, for evidently the process can be and is actually gone through only by the agency of the photographer, who, to operate successfully, must necessarily be, and prove himself, a most intelligent artist, calling into activity, not only his hands, senses, and body, but also and chiefly, in order to control them, his scientific aptitudes and superintending mind.

"It strikes common sense that the defendant is not an automaton, but is one who, practicing a science or a liberal art, is a scientist, or an artist, although of an inferior grade."

In the case of State v. Chicago Hat Works, 174 La. 814, 141 So. 844, it was held that one engaged in the calling of cleaning, repairing, and blocking hats with the aid of tools and machinery was engaged in a mechanical pursuit.

In City of New Orleans v. Bayley, 35 La.Ann. 545, the court held that a plasterer was exempt from the tax under the mechanical pursuit clause.

In the case of City of New Orleans v. Lagman, 43 La.Ann. 1180, 10 So. 244, it was held that:

"A mechanic [a carpenter] who contracts and shapes materials with his own hands is engaged in a mechanical pursuit." (Brackets ours.)

In the case of State v. Hirn, 46 La.Ann. 1443, 16 So. 403, the court said:

"The occupation of the barber is mechanical, exempted from a license tax by the constitution."

In the case of State v. Dielenschneider, 44 La.Ann. 1116, 11 So. 823, it was held:

That the occupation of a barber is mechanical admits of no dispute. His labor is manual, using with his hands the instruments required for his employment. He comes within the definition of a mechanic, and his pursuit has been recognized as mechanical by the decisions of this court.

At the time those two decisions were rendered, barbers were not regulated under the police power of the state as a health measure, but since that time they have been regulated similarly as beauticians by the provisions of Act No. 247 of 1928.

Since that act of the Legislature was passed, we had for consideration before this court, on application for writs of certiorari, the question of whether or not a barber was engaged in a profession within the meaning of a zoning ordinance. In other words, if the barber was engaged in a profession, then he could open his place of business in the zoned neighborhood; otherwise he was prohibited from doing so. The trial judge issued an injunction, restraining the barber from opening and operating his shop on the ground that he was not engaged in a profession. He applied to this court for writs, which were refused, on June 12, 1933, on the ground that no manifest error had been committed. City of New Orleans v. V. R. Minton et al., No. 32437.

In the recent case of State v. Reeve, 104 Fla. 196, 139 So. 817, 79 A.L.R. 1119, the Supreme Court of Florida said that the calling of barber and beauty culturist were very much akin. This is further borne out when we consider that the two statutes regulating these respective callings in this state are quite similar. See, also, Brown v. Watson, 116 Fla. 56, 156 So. 327, 329.

It is also to be noted that the state brought this action under the omnibus clause, covering "professions," of Act No. 190 of 1932, § 17, and section 25, Act No. 205 of 1924, as amended by Act No. 241 of 1928, § 3. This indicates that the members of the Legislature did not feel that "Cosmetic Therapy" was a profession subject to license tax, otherwise that profession would have been named in the license act as subject to such tax. This is particularly true, since the Legislature took cognizance of "Cosmetic Therapy" by passing the regulatory act.

The fact that this suit was brought simply means that the supervisor of public accounts' office was of the opinion that those engaged in the practice of Cosmetic Therapy were engaged in a profession and not entitled to the constitutional exemption in favor of those engaged in mechanical pursuits.

The test as stated by the foregoing definitions and authorities is wheth-

er or not the intellectual quality predominates over manual skill in performing the duties of the particular calling. If the mental aspect is controlling, then the pursuit is classified as a profession. If skill in the manipulation of the hands, tools, and machinery is emphasized over the mental side, then the calling is classified as a mechanical pursuit.

▪ Of course, there are certain callings which require both intellect and skill, but in such instances the pursuit is classified or listed as a "profession"; i. e., artists, dentists, surgeons, etc. There may be instances where it would be extremely difficult to determine which of the two qualities was most emphasized or required in the proper carrying out of the duties of the occupation.

All skilled artisans engaged in mechanical pursuits by the very nature of their occupation require some education, periods of apprenticeship, and experience, even though the state or the subdivision thereof has not passed legislation to regulate them. It is significant that we have been unable to find any cases where the state attempted to enforce payment of a license tax from those classes of persons; i. e., machinists, coppersmiths, boiler makers, etc.

▪ While we fully appreciate that the statute in the instant case requires the defendant to have the equivalent of a first year's high school education and that it requires training and apprenticeship to qualify her to engage in this line of endeavor, it is our opinion that the skill required of her in the use of her hands and the handling of tools and machinery predominates over the intellectual and mental requirements. She is therefore entitled to the benefits of the constitutional exemption in her favor, and cannot be compelled by legislative act to pay a license tax.

For the reasons assigned, the judgment appealed from is affirmed.