## GRAHAM FLYING SERVICE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9612. Promulgated March 20, 1947.

*Wm. W. Graham* (an officer), for the petitioner.
*Richard A. Jennings, Esq.*, for the respondent.

558

560

### OPINION.

LeMire, *Judge*: The main question for decision is whether the petitioner is a personal service corporation within section 725 (a) of the Internal Revenue Code.[1]

---

[1] SEC. 725. PERSONAL SERVICE CORPORATIONS. [As added by section 201 of the Second Revenue Act of 1940.]

(a) DEFINITION.—As used in this subchapter, the term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of shareholders who are regularly engaged in the active conduct of the affairs of the corporation and are the owners at all times during the taxable year of at least 70 per centum in value of each class of stock of the corporation, and in which capital is not a material income-producing factor; but does not include any foreign corporation, nor any corporatin 50 per centum or more of whose gross income consists of gains, profits, or income derived from trading as a principal. For the purposes of this subsection, an individual shall be considered as owning, at any time, the stock owned at such time by his spouse or minor child or by any guardian or trustee representing them.

The respondent concedes that the petitioner has met all of the statutory conditions for qualification, except the following:

1. That the petitioner's "income is to be ascribed *primarily* to the activities of shareholders who are regularly engaged in the active conduct of the affairs of the corporation," and

2. That the petitioner's "capital is not a *material* income-producing factor." (Italics supplied.)

Similar conditions were provided in the sections of former revenue acts relating to personal service corporations.[2] Then, as now, Congress employed words of degree which required further definition by the courts according to the facts of each case. It is hard to reconcile many of the former decisions. See *William A. Brady Theatre Co.* v. *Commissioner*, 42 Fed. (2d) 181. For present purposes the apparent conflict in those precedents may be illustrated by reference to four decisions of the Circuit Courts of Appeal, each involving a corporation which conducted a school. In *Shipley School* v. *McCaughn*, 34 Fed. (2d) 281, and *Strayer's Business College* v. *Commissioner*, 35 Fed. (2d) 426, cited by the petitioner, the taxpayers succeeded; in *Metropolitan Business College* v. *Blair*, 24 Fed. (2d) 176, and *Atlanta-Southern Dental College* v. *Commissioner*, 50 Fed. (2d) 34, cited by the respondent, the taxpayers failed to qualify as personal service corporations. In each of these cases the stockholders were assisted by other teachers and capital was invested in school equipment. The differences between these cases were differences in degree. For example, in the first two cases the amount of capital was $25,000 or less; in the latter two cases the capital was about $100,000. It is to be noted, however, that the decisions in the first two cases did not consider the school quarters, which were leased, as being part of the capital involved. We have recently held that a valuable leasehold constitutes capital within the meaning of section 725(a). *Fairfax Mutual Wood Products Co.*, 5 T. C. 1279. See *William A. Brady Theatre Co.* v. *Commissioner*, *supra*.

In another line of cases the decisions turned upon the percentage ratio of gross income derived from capital to the total gross income of the taxpayers. In *Edward P. Allison Co.* v. *Commissioner*, 63 Fed. (2d) 553, 558, which is typical, it was said of those cases:

It is apparent that no definite percentage ratio of gross income derived from capital sources to total gross income can be fixed as the exact point at which capital becomes a material income-producing factor. The contribution of capital to income is a matter largely of approximation. The way in which capital

[2] Section 200 of both the Revenue Acts of 1918 and 1921 provided in part that:

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor * * * "

makes its contribution is important. If utilized in the form of salaries, wages, office rent, etc., it does not make it a material income-producing factor, even though such expenditures are usually essential to the production of income.
* * *

When the use of capital goes further and gives character to a sizable portion of the operations of the corporation, the percentage of gross income directly attributable to capital sources required to render capital a material income-producing factor need not be very great.

The petitioner in the present case has not afforded us with any break-down of the income derived from its capital. We do not know that it could have done so. Yet there is ample evidence that capital was an income-producing factor in its business. We think that the petitioner has failed to show that it was *not* a material factor.

The petitioner's stock, its mean accumulated earnings, and its average borrowed capital were not less than $24,000 in 1941 and $60,000 in 1942, all of which was invested in facilities and equipment for its flying school. During 1941 it occupied leased quarters. The petitioner's balance sheets show even greater invested and borrowed capital at the end of those years. They also show that it had assets consisting of "furniture, equipment (including airplanes and parachutes) less depreciation" of $34,689.50 at the end of 1941 and $97,910.82 at the end of 1942. The petitioner owned 13 airplanes at the end of 1941 and it purchased 13 additional planes during 1942. The undepreciated cost of the 26 planes was $77,707.80. The petitioner could not have operated its flying school without such equipment.

In the case of *Atlanta-Southern Dental College, supra,* emphasis was given to the large amount of the capital investment, there $100,000. It was said in part (p. 37) that:

* * * As to the tuition fees, it is perfectly plain that they were earned and produced by the use of a plant and equipment without which, no matter how eloquent the teaching of the stockholding professors might have been, no matter how magnetic the influence and drawing capacity of the stockholders, no single student could have been drawn to the school, or if drawn, kept, and instructed there.

In the present case the tuition fees were even more directly related to the use of the petitioner's equipment. The petitioner was compensated for the use, as well as for instruction in the use, of airplanes on the basis of flight time. For example, the evidence includes a typical contract with CAA under which the petitioner had to provide 2 approved airplanes for the first 10 students and 1 additional plane for each additional 10 students. Under that contract the flight instruction consisted of not less than 35 hours of flying time, of which a minimum of 13½ hours was solo. The petitioner was compensated in installments upon the completion of scheduled stages of flight time. If any student failed to complete the course, the petitioner

received payment at hourly rates, not exceeding the aggregate installment for each stage. Thus, the income was earned in large part by the use of the airplanes in which it had invested substantial capital.

On these facts we hold that the petitioner's capital was a material income-producing factor during 1941 and 1942. In so holding it is unnecessary to determine whether the other provisions of the statute have been met. The Commissioner correctly determined that the petitioner was not a personal service corporation within section 725 (a).

*Decision will be entered for the respondent.*