## GRAHAM FLYING SERVICE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13621.

Circuit Court of Appeals, Eighth Circuit.

March 25, 1948.

William W. Graham, of Omaha, Neb., for petitioner.

Abbott M. Sellers, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Helen R. Carloss, and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, THOMAS, and COLLET, Circuit Judges.

GARDNER, Circuit Judge.

This matter is before us on petition to review the decision of the Tax Court of

the United States, which determined deficiencies in petitioner's income taxes for the years 1941 and 1942. The controversy is directed to the question whether the petitioner is a personal service corporation within the meaning of Section 725(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 725(a). If so, it was exempt from the excess profit taxes assessed against it for the years 1941 and 1942. If not, the assessment was correct. It is therefore necessary to give consideration to the definition of a personal service corporation. Section 725 of the Internal Revenue Code defines such a corporation in the following words:

"As used in this subchapter, the term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of shareholders who are regularly engaged in the active conduct of the affairs of the corporation and are the owners at all times during the taxable year of at least 70 per centum in value of each class of stock of the corporation, and in which capital is not a material income-producing factor; * * *."

The Treasury Regulations promulgated under this section of the Revenue Code contain, among other things, the following:

"(c) Income to be ascribed primarily to the activities of shareholders.—If employees other than shareholders contribute substantially to the services rendered by a corporation, such corporation is not a personal service corporation unless, in every case in which services are so rendered, the value of and the compensation charged for such services are to be attributed primarily to the experience or skill of the shareholders and such fact is evidenced in some definite manner in the normal course of the business or profession. The fact that the shareholders give personal attention or render valuable services to the corporation as a result of which its earnings are greater than those of a corporation engaged in a like or similar business or profession, the shareholders of which are not regularly engaged in the activities of the corporation, does not of itself constitute the corporation a personal service corporation."

During the years involved the petitioner was engaged in conducting a flying school at Sioux City, Iowa. E. L. Graham owned 96 per cent of its capital stock and was its president and general manager. His wife and brother each owned 2 per cent of the stock and were respectively secretary and vice president of the corporation. Graham devoted his entire time to the conduct of petitioner's business and had sole charge of its affairs. He was an experienced flyer and was licensed as a commercial pilot. In 1939 he operated a flying school for profit in connection with the Civil Aeronautics Administration. In 1940 he incorporated as Graham Flying Service with an issued capital stock of $8,423, which was issued in exchange for certain personal property, including five planes, transferred to the corporation by Graham. During 1941 petitioner operated from a leased airfield, but in 1942 it purchased a field for approximately $21,000, and during that year spent $8,000 for the construction of an administration building, office, repair shop and hangars. It also purchased airplanes, parachutes and repair parts for training purposes. At the end of 1941, it owned thirteen airplanes which had cost $34,960.42, and at the end of 1942, it owned twenty-six airplanes which had cost $77,707.80. During the year 1941, petitioner's borrowed capital amounted to $8,741.62, and during the year 1942, it amounted to $34,399.34. The entire capital for the two taxable years was employed to purchase facilities and equipment to conduct the flying school.

Graham was chief instructor and flight examiner. In 1941 he taught one complete course of apprentice instructors and one complete course of secondary students. During 1941 and 1942 he gave spot checks, flight checks and final flight tests to many students and personally flew with 90 per cent of the students. The remaining tests were given by representatives of the Civil Aeronautics Administration. He devoted about 70 per cent of his time to instruction and about 20 per cent to supervision of other instructors, and about 10 per cent to management duties. In 1941 he was assisted by five instructors, three mechanics and two office employees. These employees

were paid $24,537.14. In 1942 he was assisted by eleven instructors, four mechanics, three office employees and three guards, who were paid $45,064.33. Graham's salary was $3600 in 1941 and $9600 in 1942.

As of December 31, 1941, petitioner's assets were of the value of $57,111.77, and as of December 31, 1942, its assets were of the value of $155.694.51. The compensation received by petitioner for flight instruction during 1941 was $75,727.17, and for 1942, $137,504.96. In addition to this income, in 1941 it received $4,178.65 from charter flights, storage and repairs on planes not owned by it, and miscellaneous sales, and in 1942 it received from like sources the sum of $2,711.73.

■ The Tax Court held that the petitioner's capital was a material factor in producing its income for the years in question, and hence, that it was liable for excess profit taxes for those years. This determination by the Tax Court is presumptively correct. The facts are undisputed but the conclusion or inference to be drawn from them is a mixed question of law and fact. The statute enumerates certain prerequisites as necessary to a classification as a personal service corporation. One of the requisite conditions is that "capital is not a material income producing factor." The record discloses that for the year 1941 petitioner's capital was in excess of $50,000, and for the year 1942 it was in excess of $150,000. Some $29,000 was used by it in 1942 to purchase an airfield and to construct facilities thereon. The remaining capital was apparently used for the purchase of aircraft and parachutes, all essential to the business which petitioner was conducting.

In Edward P. Allison Co. v. Commissioner, 8 Cir., 63 F.2d 553, 558, the taxpayer contended that it was entitled to be classified as a personal service corporation. It was engaged in two types of business, one general electric construction, and the other supervising such construction done by others. While the construction work produced greater gross income it also involved very heavy expenses so that the supervisory function according to the taxpayer's accounting was responsible for all of its profit. In the course of the opinion it is, among other things, said:

"The contribution of capital to income is a matter largely of approximation. The way in which capital makes its contribution is important. If utilized in the form of salaries, wages, office rent, etc., it does not make it a material income-producing factor, even though such expenditures are usually essential to the production of income. * * *

"When the use of capital goes further and gives character to a sizable portion of the operations of the corporation, the percentage of gross income directly attributable to capital sources required to render capital a material income-producing factor need not be very great."

■ Counsel places great emphasis upon the importance of the services of petitioner's manager and principal stockholder, and certainly they were very considerable and very essential to the success of its business and the production of its income. But can it be said that without the airfield and without the aircraft and other facilities, Mr. Graham's activities could have produced the income earned by this corporation during the years in question? The capital was not solely utilized in the form of salaries, wages, office rent, etc., but it surely went further and gave character to a substantial portion of petitioner's operations. There was no proof showing what portion of the income was attributable to personal services and what portion was attributable to invested capital, and it was incumbent upon petitioner to prove that its income was not properly attributable to the use of its capital. We can not say that the use of capital was merely incidental to the conduct of petitioner's business. The invested capital was certainly not nominal and the evidence and stipulated facts warrant the conclusion that the business of petitioner could not have been successfully conducted, nor the income produced, without the use of large sums of money. Under such circumstances petitioner was not entitled to be classified as a personal service corporation. Edward P. Allison Co. v. Commissioner of Inter-

94

nal Revenue, supra; Crider Bros. Commission Co. v. Commissioner, 8 Cir., 45 F.2d 974; Denver Live Stock Commission Co. v. Commissioner, 8 Cir., 29 F.2d 543; St. Paul Abstract Co. v. Commissioner, 8 Cir., 32 F.2d 225.

The case of Atlanta-Southern Dental College v. Commissioner, 5 Cir., 50 F.2d 34, 37, bears close analogy to the instant case. In that case the taxpayer conducted a dental school, including a dental infirmary, as an essential part of the instruction. There was invested capital of over $100,000. In the course of the opinion the court, observing that the decision of the Board of Tax Appeals should be sustained on the grounds specifically relied upon by the Board, held that it should be sustained "upon the further ground that it admits of no contrary opinion that the capital employed by petitioner in the conduct of its business was a material income producing factor, both as to the monetary returns which came directly from the operation of the dental infirmary, and as to the tuition fees themselves. As to the tuition fees, it is perfectly plain that they were earned and produced by the use of a plant and equipment without which, no matter how eloquent the teaching of the stockholding professors might have been, no matter how magnetic the influence and drawing capacity of the stockholders, no single student could have been drawn to the school, of if drawn, kept, and instructed there."

So in the instant case, Mr. Graham and his corps of instructors could not successfully have conducted his flying school without the aircraft equipment and airfield which represented capital investment. The contracts which petitioner had with the Civil Aeronautics Administration required that it have a certain ratio of approved aircraft to the students, and required that it maintain equipment and facilities in accordance with standards prescribed. We think the decision of the Tax Court warranted by the undisputed facts and that it has a "reasonable basis in the law." Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 246, 88 L.Ed. 248. The decision of the Tax Court is therefore affirmed.