GEORGE ROUSKU AND ESTHER ROUSKU, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2946–70. Filed June 21, 1971.

*Wilfred L. Burke*, for the petitioners.
*Patrick R. McKenzie*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioners' income tax for 1967 in the amount of $734.73. The only issue presented for decision is whether, within the meaning of section 911,[1] capital was a material income-producing factor in an automobile body repair business which petitioner George Rousku conducted in Canada.

### FINDINGS OF FACT

George Rousku (hereinafter referred to as petitioner) and Esther Rousku, citizens of the United States, were legal residents of Leamington, Ontario, Canada, at the time their petition was filed. They filed their joint Federal income tax return for 1967 with the Commissioner of Internal Revenue, Office of International Operations, Washington, D.C. For the past 9 years, they have been bona fide residents of Canada.

Petitioner, during most of his career, has been engaged in various aspects of the automobile body repair business. He started work in Duluth, Minn., as an apprentice "bump-out" mechanic at the age of 15. This type of mechanic is primarily concerned with repairing and reconditioning automobiles which have been damaged in collisions. In 1925, he moved to Detroit and worked at General Motors Proving

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

Grounds for 2 years as a mechanic and test driver. Thereafter, he has been engaged primarily in the automobile body repair business, from time to time operating his own shop, working for Chrysler Corp., and doing steel fabrication correction work for the United States Bureau of Ships. He also taught repair work techniques at the Wolverine School of Trade.

In 1961, petitioner moved to Canada. For a short time, he worked as an employee in an automobile body shop. In January 1962, he acquired his own body shop, and since then has been engaged as a sole proprietor in the operation of this business.

In order to work as a bump-out mechanic in Canada and to operate an automobile body repair shop, petitioner was required to obtain both a certificate of qualification and a garage license from the Department of Labor, Province of Ontario. He obtained both of these licenses in 1962, and has held them continuously since that time.

Petitioner's business consists primarily of the repair of automobiles which have been involved in collisions. Repairs of this nature require the use of equipment and machinery such as air compressors, welding equipment, grinders, sanders, and body jacks. Air filters and paint-spraying equipment are also used for repainting the repaired automobiles. In addition, in some instances petitioner purchases and sells parts, such as bumpers, fenders, panels, and the like, which are used in making repairs.

During 1967, petitioner employed five licensed workmen to assist him in his business. While petitioner personally performed some shop services, his work consisted primarily of estimating the cost of repair work, supervising other workers in the body shop, allocating work to the several employees, and inspecting the completed repairs prior to delivery to the customers. During the year in issue he kept his business open 5½ days each week, but he personally averaged 10 to 12 hours of work, 7 days a week. This overtime and weekend work consisted mainly of making estimates for customers and doing his recordkeeping.

During 1967, petitioner's equipment and tools for his repair operations had a book value of $4,023. His purchases of parts for automobile repairs amounted to $61,420.19 during the year; he carried an average inventory of parts in the amount of $2,500. In April 1967, petitioner bought the building in which his shop was located for $38,000, making no downpayment; his monthly payments on the purchase price are $125 plus interest. Prior to the purchase, he had paid rent in the amount of $125 per month.

During 1967, petitioner had gross receipts totaling $121,253.50, of which $55,037.61 was attributable to labor and $66,215.89 was attributable to the sale of materials. He paid wages of $38,674.63, realizing

a gross profit from labor of $16,362.98. The cost of sales of materials amounted to $56,150.44, leaving a gross profit from this source of $10,-065.45. His net profit from all sources was $8,775.07.

Respondent, in his notice of deficiency, allowed as an exclusion from taxable income, 30 percent of the income from the automobile body business, stating that petitioner was engaged in a trade or business in which both personal services and capital are material income-producing factors.

### OPINION

For bona fide residents of a foreign country, section 911(a)(2) provides for the exclusion from taxable income of limited "amounts received from sources without the United States * * * which constitute earned income attributable to services performed" during the period of foreign residency. Section 911(b)[2] defines "earned income" to mean "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered." This section further provides that, in the case of a taxpayer engaged in a trade or business "in which both personal services and capital are material income-producing factors," an amount not in excess of 30 percent of the "net profits" of the business shall be considered as "earned income."

Respondent contends that petitioner's body shop business is one in which capital is a material income-producing factor, and that, therefore, petitioner's exclusion is limited to 30 percent of his net profits from the business. Petitioner argues that the income from his business is derived principally from labor, and that capital is not a material income-producing factor.

The issue as to whether a trade or business is one in which "both personal services and capital are material income-producing factors" has arisen under several statutes and in a variety of factual settings. See discussion in *Warren R. Miller, Sr.,* 51 T.C. 755, 759 (1969); *Fred J. Sperapani,* 42 T.C. 308, 334 (1964). The question is fundamentally factual in nature. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business conducted

---

[2] SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(b) DEFINITION OF EARNED INCOME.—For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

by the enterprise. Moreover, capital is ordinarily a material income-producing factor if the operation of the business requires substantial inventories or substantial investments in plant, machinery, or other equipment. On the other hand, capital is not a material income-producing factor where the gross income of the enterprise consists principally of fees, commissions, or other compensation for personal services. See *Fred J. Sperapani, supra* at 333. If capital is "utilized merely to pay the cost of salaries, wages, office space, and general business expenses, it is not a material income-producing factor but is only incidental to the production of the income." *Warren R. Miller, Sr., supra* at 759; *Edward P. Allison Co.* v. *Commissioner*, 63 F. 2d 553, 558 (C.A. 8, 1933), affirming 22 B.T.A. 1371 (1931).

Turning to the facts of the present case, even though substantial amounts of personal services are involved in petitioner's business, we think capital was a material income-producing factor. During 1967, his total charges for materials ($66,215.89) exceeded his total charges for labor ($55,037.61). Compared with gross income in the amount of $16,362.98 from labor charges, his gross income from the sale of materials and parts was $10,065.45, nearly 40 percent of the total. A substantial portion of petitioner's gross income was, therefore, derived from the sale of automobile parts. Petitioner's machinery and equipment had a book value of $4,023, and he carried an inventory of parts, which averaged about $2,500.[3] While these amounts may appear to be small compared with the capital employed in many business endeavors, they must be related to petitioner's net operating profit from his business, the amount of only $8,775.07.

We note also that petitioner committed himself in April of 1967 to purchase the building used for his business at a cost of $38,000. While he made no downpayment on the building and his monthly payments approximated his prior rent, the record does not contain the details as to the other terms of the building purchase or the prior rental arrangements. We note that a valuable leasehold, as well as the ownership of the quarters used for a business, may constitute part of the capital employed in producing income. See *Graham Flying Service*, 8 T.C. 557, 561 (1947), affd. 167 F. 2d 91 (C.A. 8, 1948), certiorari denied 335 U.S. 817 (1948); *Fairfax Mutual Wood Products Co.*, 5 T.C. 1279 (1945).

We recognize that no definite percentage ratio of gross income derived from capital sources to total income can be fixed at an exact

---

[3] Petitioner's inventory at the end of 1967 was $6,819.75. The testimony, however, was that this amount included two damaged automobiles which petitioner had acquired and was reconditioning for resale purposes. The record does not show whether petitioner regularly derived a portion of his income from similar transactions.

point as a key to deciding when capital is a material income-producing factor. Moreover, the extent to which capital actually contributes materially to the production of income in a business like that of petitioner's is at best an approximation. See *Edward P. Allison Co.* v. *Commission, supra* at 558. It is clear, however, that petitioner could not have produced his income without the capital needed for his garage space and his equipment. Nor could he have earned his income without parts needed for repair work. From the manner in which he conducted his business, we think it apparent that it basically involves merchandising as well as the performance of personal services. The capital employed by petitioner was not merely incidental to his personal services but contributed materially to the production of his income. We think his business was the kind of activity for which the 30 percent of gross income exclusion was designed.

As an alternative contention, petitioner maintains that he is engaged in a professional occupation within the meaning of section 1.911–1(a)(4), Income Tax Regs., and, consequently, is entitled to exclude all of his business income from his gross income. In this connection, section 1.911–1(a)(4) provides:

*Earned income and employed assistants.* The entire amount received as professional fees shall be treated as earned income if the taxpayer is engaged in a professional occupation, such as a doctor or a lawyer, even though he employs assistants to perform part or all of the services * * *

Petitioner urges that, because of the Canadian requirements of apprenticeship, examination, and licensing as a condition to working as a bump-out mechanic, his work falls in the same category as other professional occupations.

Without discusing the semantic and occupational differences between "professional" work of the nature of petitioner's and those professional occupations cited as examples in the regulation, see *State* v. *Cohn*, 184 La. 53, 165 So. 449 (1936), suffice it to say, petitioner does not meet the regulation's requirements. His business required a substantial amount of capital and, for this reason, does not qualify, even though it was subject to governmental regulation. See, e.g., *Graham Flying Service* v. *Commissioner*, 167 F. 2d 91, 93–94 (C.A. 8, 1948), affirming 8 T.C. 557 (1947), certiorari denied 335 U.S. 817 (1948); *Atlanta-Southern Dental College* v. *Commissioner*, 50 F. 2d 34, 37 (C.A. 5, 1931), affirming 15 B.T.A. 1325 (1929).

Due to concessions made by the parties, and to properly reflect our Findings,

*Decision will be entered under Rule 50.*