JOHN C. HOLLAND AND MARIE HOLLAND, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4275–76.    Filed September 25, 1978.

*John M. Carter,* for the petitioners.
*John S. Ball,* for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined deficiencies in petitioners' 1972 and 1973 income taxes in the amounts of $2,776.26 and $19,948.38, respectively. Other adjustments in the statutory notice not having been placed in issue, the remaining question is whether petitioner-husband may include 100 percent of net profits from his unincorporated maintenance contracting business in "earned income" in computing his tax liabilities under the maximum tax provisions of section 1348. Resolution of this question turns upon two subissues:

(1) Whether respondent is bound by an audit report issued by an agent of respondent prior to the statutory notice of deficiency;

(2) If not, whether the 30-percent limitation on the amount of earned income from business in which capital is a material income-producing factor under sections 1348(b)(1) and 911(b), I.R.C. 1954,[1] applies to net profits of a business within the United States.

This case was submitted fully stipulated under Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts with the exhibits attached are incorporated herein by this reference. The pertinent facts are as follows:

John C. Holland and Marie Holland, husband and wife, resided

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise noted.

in Chesapeake, Va., when they filed their petition. Marie Holland is a petitioner only because the couple filed joint returns; references to "petitioner" alone will be to John C. Holland.

Petitioners timely filed joint income tax returns for 1972 and 1973 with the Internal Revenue Service Center, Memphis, Tenn.

During 1972 and 1973 petitioner operated an unincorporated maintenance contracting business. His business consisted principally of collecting and disposing of trash, garbage, and scrap material. A substantial portion of petitioner's business was derived by contracting with the Government to provide trash and garbage collection service at various naval installations in the general vicinity of Norfolk, Va.

The net profit from petitioner's business, as reflected on the returns and after making adjustments for business-related items shown in the notice of deficiency and not contested by petitioners, was $175,243.59 in 1972 and $246,987.24 in 1973.

Petitioner invested in equipment, machinery, and other assets for use in his business. The income from petitioner's business could be earned only through the use of these assets. Petitioner's cost basis in depreciable property used in his business amounted to more than $172,000 in 1972 and more than $305,000 in 1973.

In addition to office equipment, petitioner's depreciable assets used in the business generally consisted of trucks, bulldozers, dumpsters, cranes, and various other items of "heavy" and light equipment and machinery.

Petitioner employed approximately 65 people in his business during the periods in question.

Petitioner, generally speaking, occupied a managerial position in his business as opposed to actually operating a piece of equipment or machinery on a daily basis.

Petitioners computed their 1972 and 1973 tax liabilities pursuant to the maximum tax on earned income provisions of section 1348. In their maximum tax computations, petitioners included in "earned income" all of the net profit from the maintenance contracting business.

Three "Income Tax Audit Changes" forms were issued by an agent of respondent prior to issuance of the statutory notice of deficiency. The proposed deficiencies in these audit reports were as follows:

| | | 1972 | 1973 |
|---|---|---|---|
| 1. | Form 4549 | $791.06 | $2,468.23 |
| 2. | Form 4549–A (First corrected report) | 14,212.94 | 26,489.90 |
| 3. | Form 4549 (Second corrected report) | 2,776.26 | 19,948.37 |

In the first Form 4549 the inclusion of all the net profits of petitioner's business in earned income for maximum tax purposes was not challenged. In the corrected audit reports, however, respondent treated only 30 percent of the net profits of petitioner's business as earned income.[2]

Petitioners are contesting only the computation of their tax liability as determined in the statutory notices of deficiency. In determining petitioner's earned income for use in the maximum tax computation, respondent determined that capital was a material income-producing factor and limited petitioner's earned income to 30 percent of the net profits of his business for the years in question pursuant to sections 1348(b)(1) and 911(b). The 1972 and 1973 tax liabilities were recomputed by income averaging—the most favorable method available to petitioners as a result of the 30-percent limitation.[3]

The first argument made by petitioners is that respondent should be bound by the first audit report. In that report, Form 4549, the inclusion in earned income of all the net profits of petitioner's business for maximum tax purposes was not challenged.

No authority is cited by petitioners in support of this contention, and in view of *Hudock v. Commissioner*, 65 T.C. 351, 362–363 (1975), this argument requires little discussion. In *Hudock* we rejected petitioners' claims that execution of a Form 4549 by petitioners and a revenue agent constituted a closing agreement under section 7121[4] or operated to invoke the doctrine

---

[2]The originals of these forms were not offered into evidence. Of the copies received in evidence, only the Form 4549–A was dated (May 6, 1975) and signed (by an examining officer of respondent). We gather from the parties' briefs that in fact the first Form 4549 was executed by petitioners and a revenue agent and/or district conferee of respondent, but that it was not accepted by the District Director.

[3]The use of income averaging in the second corrected audit report and the notice of deficiency appears to account for most of the difference in tax reflected in those documents and the greater amount of tax reflected in the first corrected audit report.

[4]Sec. 7121, as in effect in the years in issue, provided:

(a) AUTHORIZATION.—The ecretary or his delegate is authorized to enter into an agreement in

of equitable estoppel against respondent's assessment of the deficiency at issue. We reasoned that a Form 4549 does not constitute an agreement by the Secretary to anything, much less a final closing agreement, and that execution of the Form 4549 and a payment pursuant thereto did not establish or give rise to the doctrine of equitable estoppel. Our analysis there applies with equal force here.

The substantive issue deals with the definition of earned income for maximum tax purposes. In 1972 and 1973, section 1348(a) provided for a 50-percent maximum tax rate on earned taxable income. Pursuant to section 1348 (b)(2) "earned taxable income" was generally the same proportion of total taxable income as earned net income was of adjusted gross income, reduced by certain tax preference income. For this purpose "earned net income" meant earned income reduced by certain related deductions. "Earned income" thus was the key term in the maximum tax computation.

"Earned income" in turn was defined by section 1348 (b)(1) to mean—

any income which is earned income within the meaning of section 401(c)(2)(C) or section 911(b), except that such term does not include any distribution to which section 72(m)(5), 72(n), 402(a)(2), or 403(a)(2)(A) applies or any deferred compensation within the meaning of section 404. * * *

Section 401(c)(2)(C) defines earned income to include income from disposition of certain property by an individual whose personal efforts created the property. Section 911(b) defines "earned income" as follows:

(b) DEFINITION OF EARNED INCOME.—For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a

---

writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period.

(b) FINALITY.—If such agreement is approved by the Secretary or his delegate (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

Consequently, by reference to section 911(b), "earned income" for purposes of applying the maximum tax under section 1348 is statutorily limited to 30 percent of net profits derived by a taxpayer engaged in an unincorporated trade or business in any case in which both personal services and capital are material income-producing factors.

That capital was a material income-producing factor in petitioner's business apparently is not disputed. Compare *Rousku v. Commissioner,* 56 T.C. 548, 550–551 (1971) (capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business; capital is ordinarily a material income-producing factor of the operation of the business requiring substantial investments in plant, machinery, equipment, or inventories); sec. 1.1348–3(a)(3)(ii), Income Tax Regs. If there is a dispute on this point we conclude that capital was a material income-producing factor in petitioners' business.

Rather, petitioners contend that the 30-percent limitation contained in section 911(b) does not apply here because petitioner's net business profit was derived from a domestic operation. The basis for petitioners' position is that the caption to section 911 reads "Earned Income from Sources Without the United States."

We disagree with petitioners' strained reading of the statute. To begin with, section 1348(b)(1) refers to the definition of earned income in section 911(b), not section 911 in general, and the caption and language of section 911(b) are not limited to earned income from sources without the United States. Moreover, petitioners' argument proves too much and would frustrate the purposes of section 1348. Extending petitioners' logic, the maximum tax would (except for income from the disposition of property under section 401(c)(2)(C)) apply only to earned income from sources without the United States. Indeed under this view petitioners would have no earned income at all in the years in

question and the maximum tax would not apply to any of petitioners' income. This actually would place petitioners in a worse position since respondent included 30 percent of petitioners' net business profit in earned income for maximum tax purposes. The averaging provisions were used instead because it was to the petitioners' advantage.

The more logical interpretation is that Congress referred to section 911(b) for convenience and simplicity. Incorporation of section 911(b) into another statute is done to avoid duplication and prolixity and calls for practical and sensible interpretation in fitting the provisions of the adopted statute into the scheme of the adopting one. *Miller v. Commissioner*, 51 T.C. 755 (1969). In *Miller* we dealt with an interpretation of the definition of earned income for the retirement income credit provided in section 37 (since repealed). Under that provision the retirement income credit was a specified percentage of retirement income, reduced by certain portions of earned income. Under section 37(g) the term "earned income" was said to have "the meaning assigned to such term in section 911(b)." As here, the income involved was from a business conducted in this country. In applying section 911(b) to determine the amount of "earned income" the amount considered was the income from the domestic business activity. At no point was it suggested that earned income for retirement income credit purposes meant only income earned from sources without the United States.

The legislative history of section 1348 leaves no doubt that the 30-percent limitation of section 911(b) was intended to apply to domestic income for maximum tax purposes as well:

> Earned income generally includes wages, salaries, professional fees or compensation for personal services and, in the case of a taxpayer engaged in a trade or business where both personal services and capital are a material income-producing factor, a reasonable amount but not more than 30 percent of his share of the net profits of the business. Earned income does not include lump-sum distributions from employee's trusts or employee annuity plans when long-term capital gains treatment is afforded the employer's contribution, nor does it include the employer's contribution if that is eligible for the special averaging rules applicable if the total distribution occurs in one year. In addition, any deferred compensation is not to be considered earned income. [H. Rept. 91–413, 91st Cong., 1st Sess. 209 (1969).]

Nowhere in the legislative history of section 1348 is there any reference to income earned outside the United States; it would be illogical to apply the limitation to foreign income only. The

regulations follow this legislative history. Sec. 1.1348–3(a)(3), Income Tax Regs.

Accordingly, we agree with respondent's computation of petitioners' tax deficiencies for 1972 and 1973.

*Decision will be entered for the respondent.*