CASEY W. JONES AND MARGIE K. JONES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 12287-79.
United States Tax Court
T.C. Memo 1982-612; 1982 Tax Ct. Memo LEXIS 136; 44 T.C.M. (CCH) 1456; T.C.M. (RIA) 82612; October 20, 1982. Martin A. Welp, for the petitioners. Robert J. Burbank, for the respondent. HAMBLEN
MEMORANDUM OPINION HAMBLEN, Judge:* Respondent determined a deficiency of $1,518 in petitioners' 1976 Federal income tax. The sole issue for decision is whether capital was a material income-producing factor in petitioners' retail grocery business within the meaning of section 1348. [1]
*139 All of the facts have been stipulated and are found accordingly. Petitioners, Casey W. Jones and Margie K. Jones, husband and wife, resided in Gretna, Louisiana, when they filed their 1976 joint income tax return with the Internal Revenue Service Center, Austin, Texas, and when they filed their petition in this case. On March 15, 1964, petitioners began operating a supermarket under the name Casey Jones Supermarket (hereinafter CJS) in Stumpf's Westside Shopping Center, Gretna, Louisiana. From that date through July 31, 1976, CJS was wholly owned by petitioners and operated by them as an unincorporated business. On August 1, 1976, all of the assets of CJS were transferred to Casey Jones Supermarket, Inc., a Louisiana corporation, and all of the corporation's stock was issued to petitioners and their son, Kirk Jones. CJS conducted its supermarket business in a leased building of approximately 22,000 square feet. CJS also leased two warehouses, one of which it subleased to a third party for $10,155.88 during 1976. From January 1, 1976, through July 31, 1976, the total rent paid by CJS for the three buildings was $43,285.43. Casey Jones controlled and managed the business *140 operations of CJS. He normally worked a minimum of five days a week, averaging 48 hours a week, but would work more if necessary. Margie Jones did bookkeeping and accounting work for CJS. She worked a minimum of four days a week, averaging 20 hours a week, but she also would work more if necessary. Kirk Jones, the petitioners' son, was employed by CJS as the store manager. CJS also employed an assistant store manager, a produce manager, a meat department manager, and a dairy department manager. During the period in issue, CJS had approximately 35 full-time employees and five part-time employees. From January 1, 1976, through July 31, 1976, CJS purchased depreciable equipment used in the operation of its supermarket business at a cost of $17,391.29. The total cost of all the depreciable property owned by CJS as of July 31, 1976, was $196,051.85, which the accumulated depreciation thereon equalled $92,259.53. For the period from January 1, 1976, through July 31, 1976, petitioners reported on their 1976 tax return the following net profit and cost of goods sold from the operation of CJS: Net Profit
Gross receipts [2]
$3,071,856.41
Cost of goods sold
2,601,667.84
Gross profit
$ 470,188.57
Other income [3]
35,293.46
Total income
$ 505,482.03
Total deductions
404,114.09
Net profit
$ 101,367.94
Cost of Goods Sold
Beginning inventory
$ 74,638.54
Purchases (less spoilage allowance)
2,732,382.53
Total
$2,807,021.07
Less ending inventory
205,353.23
Cost of goods sold
$2,601,667.84
*141 On their 1976 return, petitioners computed their income tax pursuant to the maximum tax provisions of section 1348. They reported earned income of $90,677.31, consisting of the following items: Item
Amount
CJS net profit
$101,367.94 Director's fees
455.00 Farm loss
(11,145.63)
$ 90,677.31 In the notice of deficiency, respondent determined that petitioners were not entitled to compute their income tax under section 1348 because capital was a material income-producing factor in petitioners' supermarket business. [4]
Section 1348 [5] limits the maximum marginal tax rate on earned taxable income to *142 50 percent. Earned income is defined for purposes of section 1348 as "earned income within the meaning of section 401(c)(2)(C) or section 911(b)." [6] The relevant provision [7] in the instant case is section 911(b), which provides: *143 (b) Definition of Earned Income.--For purposes of this section the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. [Emphasis added.] Respondent maintains that capital was a material income-producing factor in petitioners' supermarket business and, therefore, only 30 percent of the net profit therefrom constitutes earned income for purposes of section 1348.Petitioners, on the other *144 hand, insist that the 30-percent limitation [8] is inapplicable because their personal services was the material income-producing factor in their supermarket business. For the reasons set forth below, we agree with and hold for respondent. Whether capital is a material income-producing factor is determined from all the facts and circumstances of the particular case. Bruno v. Commissioner,71 T.C. 191, 197 (1978); Rousku v. Commissioner,56 T.C. 548, 550 (1971). Capital is considered a material income-producing factor if a substantial portion of the *145 gross income of the business is attributable to the employment of capital in the business. Moore v. Commissioner,71 T.C. 533, 538 (1979); Bruno v. Commissioner,supra at 199.On the other hand, capital is not a material income-producing factor if the gross income of the business consists principally of fees, commissions, or other compensation for personal services. Moore v. Commissioner,supra at 538; Bruno v. Commissioner,supra at 199. Section 1.1348-3(a)(3)(ii), Income Tax Regs., sets forth the test for determining whether capital is a material income-producing factor: (ii) Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, *146 or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice. [Emphasis added.] We believe that our decision in Moore v. Commissioner,supra, the facts of which are virtually indistinguishable from those of the instant case, is dispositive of the issue presented herein.In Moore, the Court determined that capital employed in the form of inventory, depreciable assets, and leased property was a material income-producing factor in the taxpayers' retail grocery business. The Court found that the capital employed as inventory was of primary importance to their business. Indeed, the Court concluded that under section 1.1348-3(a)(3)(ii), Income Tax Regs., "all retail grocery businesses *147 employ capital as a material income-producing factor." Moore v. Commissioner,supra at 540. In the instant case, petitioners also employed substantial capital in the form of inventory, depreciable assets, and leased property. While petitioners' personal services may have been a material income-producing factor in their business, such services are inseparable from the inventory they sold; the income from their business was attributable to the price paid for the inventory and not to any compensation paid for personal services. See Moore v. Commissioner,supra at 539. Furthermore, the definition of earned income set forth in section 911(b) provides that a maximum of 30 percent of the net profits of a trade or business in which both personal services and capital are material income-producing may be considered earned income. Clearly, under Moore, capital was a material income-producing factor in petitioners' supermarket business, and, accordingly, respondent's determination must be sustained. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
*. This case was submitted fully stipulated to Judge Samuel B. Sterrett. Subsequently, by Order of the Chief Judge, the case was reassigned to Judge Lapsley W. Hamblen, Jr.↩
1. less otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the year in issue.↩
2. These receipts were derived solely from the sale of meat, produce, and groceries. ↩
3. This item was comprised of rebates of $25,137.58 and rental income of $10,155.88.↩
4. Since respondent determined that capital was a material income-producing factor in petitioners' supermarket business, only 30 percent of the net profits therefrom could be treated as earned income under sec. 1348. See sec. 911(b). Consequently, petitioners' earned income for 1976 would be too low for them to compute their tax under sec. 1348. See secs. 1 and 1348(a).↩
5. Sec. 1348 has been repealed for taxable years beginning after December 31, 1981. Secs. 101(c)(1) and 101(f)(1), Economic Recovery Tax Act of 1981, Pub.L. 97-34, 95 Stat. 183, 185, 1981-2 C.B. 264, 265.During the year in issue, sec. 1348 provided as follows: (a) General Rule.--If for any taxable year an individual has earned taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section 1 for such year shall, unless the taxpayer chooses the benefits of part I (relating to income averaging), be the sum of-- (1) the tax imposed by section 1 on the lowest amount of taxable income on which the rate of tax under section 1 exceeds 50 percent, (2) 50 percent of the amount by which his earned taxable income exceeds the lowest amount of taxable income on which the rate of tax under section 1 exceeds 50 percent, and (3) the excess of the tax computed under section 1 without regard to this section over the tax so computed with reference solely to his earned taxable income. In applying this subsection to the taxable year beginning after December 31, 1970, and before January 1, 1972, "60 percent" shall be substituted for "50 percent" each place it appears in paragraphs (1) and (2). (b) Definitions.--For purposes of this section-- (1) Earned income.--The term "earned income" means any income which is earned income within the meaning of section 401(c)(2)(C) or section 911(b), except that such term does not include any distribution to which section 72(m)(5), 402(a)(2), 402(e), or 403(a)(2)(A) applies or any deferred compensation within the meaning of section 404. For purposes of this paragraph, deferred compensation does not include any amount received before the end of the taxable year following the first taxable year of the recipient in which his right to receive such amount is not subject to a substantial risk of forfeiture (within the meaning of section 83(c) (1)). (2) Earned taxable income.--The earned taxable income of an individual is the excess of-- (A) the amount which bears the same ratio (but not in excess of 100 percent) to his taxable income as his earned net income bears to his adjusted gross income, over (B) the amount by which the greater of-- (i) one-fifth of the sum of taxpayer's items of tax preference referred to in section 57 for the taxable year and the 4 preceding taxable years, or (ii) the sum of the items of tax preference for the taxable year, exceeds $30,000. For purposes of subparagraph (A), the term "earned net income" means earned income reduced by any deductions allowable under section 62 which are properly allocable to or chargeable against such earned income. (c) Married Individuals.--This section shall apply to a married individual only if such individual and his spouse make a single return jointly for the taxable year. ↩
6. An amendment to sec. 1348 applicable to taxable years beginning after December 31, 1976, replaced the term "earned income" with the phrase "personal service income." Sec. 302(a), Tax Reform Act of 1976, Pub.L. 94-455, 90 Stat. 1554, 1976-3 C.B. (Vol. 1) 30. Personal service income means any income which is earned income within the meaning of sec. 401(c)(2)(C) or sec. 911(b) or which is an amount received as a pension or annuity which arises from an employer-employee relationship or from tax-deductible contributions to a retirement plan. See sec. 701(x)(1), Revenue Act of 1978, Pub.L. 95-600, 92 Stat. 2920, 1978-3 C.B. (Vol. 1) 154. ↩
7. Sec. 401(c)(2)(C), inapplicable here, defines earned income as "gains (other than any gain which is treated under any provision of this chapter as gain from the sale or exchange of a capital asset) and net earnings derived from the sale or other disposition of, the transfer of any interest in, or the licensing of the use of property (other than good will) by an individual whose personal efforts created such property."↩
8. For taxable years beginning after December 31, 1978, sec. 1348(b)(1) was amended to provide that "section 911(b) shall be applied without regard to the phrase, 'not in excess of 30 percent of his share of net profits of such trade or business.'" Sec. 442(a), Revenue Act of 1978, Pub.L. 95-600, 92 Stat. 2878, 1978-3 C.B. (Vol. 1) 112. Therefore, in the case of a trade or business in which both personal services and capital are material income-producing factors, sec. 1348, as amended, treated as earned income a reasonable allowance for personal services without imposing any maximum.↩