LUCILE BROWN v. W. A. WATSON, Constable, Eighth Justice
District, Leon County.

156 So. 327.
Opinion Filed August 1, 1934.

*J. H. Harrell,* for Petitioner;

*B. K. Roberts, Weldon G. Starry* and *H. H. Wells,* for Respondent.

BUFORD, J.—In this case the petitioner, Lucile Brown, sued out writ of habeas corpus alleging that she was unlawfully held in the custody of one W. A. Watson as constable of the Eighth Justice District of Leon County, Flor-

ida, under a warrant issued by Hon. W. H. Powell justice of the peace, in the following language:

"In the Name of the State of Florida, to the Sheriff or Any Constable of Said County:

"*Whereas,* Clinton Wallace has this day made oath before me that on the 18th day of April, A. D. 1934, in the County and District aforesaid, one Lucile Brown did a misdemeanor commit, to-wit: did operate a barber shop without said shop being under the direct supervision and management of a registered barber or registered barber teacher, in violation of Chapter 14650, of the Acts of 1931, and which is generally known as the 'Florida Barber Law,' contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Florida.

"These are, therefore, to command you to arrest instanter the said Lucile Brown and bring her before me to be dealt with according to law.

"Given under my hand and seal this 25th day of May, A. D. 1934."

The respondent filed his return alleging that he held the petitioner under the warrant referred to in the petition. He alleged that said warrant was issued out of the Justice of the Peace Court of the Eighth Justice District of Leon County on affidavit duly filed in such court and attached to his return and made a part thereof a stipulation of facts signed by attorney for petitioner and by the attorneys for respondent. That stipulation of facts is in the following language:

"It is herein and hereby stipulated by and between counsel for petitioner and counsel for respondent that the facts pertinent to the transaction involved in this suit are as follows:

"1. That on the 18th day of April, A. D. 1934, in the Eighth Judicial District of Leon County, Florida, Lucile

Brown operated a shop, generally known and identified as a beauty shop, but in which place the following services were rendered to any female patron who might come to said shop:

"(a) Trimming or bobbing the hair.

"(b) Facial and scalp massages or treatments with oil, cream, lotions or other preparations.

"(c) Singeing, shampooing or dying the hair or applying hair tonics.

"(d) Applying cosmetics, antiseptics, powder, oil, clay or lotions to scalp, face or neck.

"(e) The manicuring, coloring or polishing of finger-nails.

"2. That the said shop operated by the said Lucile Brown is not under the direct supervision and management of a registered barber or registered barber teacher and that no employee of said shop is a registered barber or barber teacher and that the said Lucile Brown refuses to recognize, abide by and comply with the regulations set forth by the Florida Barber Law.

"3. That the said Lucile Brown contends and offers as the sole defense to this prosecution the statement that she is a person practicing beauty culture and is exempt from the operation of the Florida Barber Law and its regulations by virtue of Section 4-d of said law.

"4. That on the 18th day of April, A. D. 1934, upon the entry and examination of said shop by Clinton Wallace, a representative of the State Board of Barber Examiners of Florida, that the said Lucile Brown was at that time engaging in the trimming of the hair of one Josephine Harrell.

"5. That the operation of said shop is continuous from day to day.

"6. That prior to April 18, A. D. 1934, the petitioner, Lucile Brown, had been warned by the State Board of Bar-

ber Examiners of Florida, that she was violating the laws
of the State of Florida, and that they had exhibited to her
a copy of the opinion of the Attorney General of Florida,
Cary D. Landis, the contents of which was to notify beauty
culturists that in his opinion the cutting of hair and other
functions ordinarily performed by a barber shop, without
the regulations of the Florida Barber Law, constitutes a
criminal offense.

"7. That the beauty shop of the petitioner is open to
children under twelve years of age, both male and female,
and while said shop does not cater to men patrons, it would
accept male patrons for the purpose of trimming the hair,
facial and scalp massages or mancuring the finger nails."

It appears to us that it is not necessary to do more than
consider the language of the warrant, together with the
stipulation of facts, to reach a determination in this case.

The petitioner was prosecuted for violation of Section 1
of Chapter 14650, Acts of 1931. That Act, in Section 2
thereof, defines "barber" in the following language:

"Section 2. Anyone or any combination of the following
practices (when not done for the treatment of disease or
physical or mental ailments and when done for payment
either directly or indirectly or without payment for the pub-
lic generally) constitutes the teaching and practice of bar-
bering.

"Shaving, or trimming the beard or cutting or bobbing
the hair.

"Facial and scalp massages or treatments with oils,
creams, lotions or other preparations.

"Singeing, shampooing or dyeing the hair or applying
hair tonics.

"Applying cosmetic preparations, antiseptics, powders, oil,
clay or lotions to scalp, face or neck; and

"For the purpose of this Act and as used herein the term 'barber shop' is hereby defined to embrace and include any establishment or place of business wherein the practice of barbering as hereinbefore defined is engaged in or carried on."

The petitioner contends that she is exempt from the provisions of the Act because of the exemption set forth in sub-paragraph "d" of Section 4 of the Act. This provision is: "The provisions of the Act shall not be construed to apply to * * * (d) persons practicing beauty culture." Unfortunately for the petitioner, the Act did not define "beauty culture" and, therefore, we are without a guide to direct us in determining what the legislative intent was when it used the words "persons practicing beauty culture." Certainly it did not mean that the practice of beauty culture included "shaving or trimming the beard or cutting or bobbing the hair." Nor did it mean "facial and scalp massages, or the treatment with oils, creams, lotions or other preparations." Nor did it mean "singeing, shampooing or dyeing the hair or applying hair tonics." Nor did it mean "applying cosmetics, preparations, antiseptics, powders, oil, clay or lotions to scalp, face or neck," because the Act specifically declared that these operations, either separately or when combined, constitute "the teaching and practice of barbering."

There is no attack made on the constitutionality of the Act under which the petitioner is held. We think that the warrant is sufficient authority for the constable to arrest and hold the accused and that the warrant, taken together with the stipulation of facts, shows that the charge has foundation in fact sufficient to preclude this Court from discharging the petitioner on habeas corpus. Therefore, it is ordered and adjudged that the return be held sufficient

and that the petitioner be remanded to the custody of the respondent to be dealt with according to law.

It is so ordered.

WHITFIELD, TERRELL and BROWN, J. J., concur in the conclusion.

DAVIS, C. J. (concurring specially in conclusion).—Section 4, par. "d," Chapter 14650, Acts of 1931, is to the effect that:

"The provisions of the *Act* shall not be construed to apply to : * * * (*d*) persons practicing beauty culture."

Section 2 defining "barbering" is a part of "the Act" as the latter phrase is used in Section 4 of said Chapter 14650, *supra.* Therefore since *no* provisions of "the Act" shall be construed to apply to any person practicing "beauty culture," it seems to me that no part of the definition of the practice of "barbering" as set forth in Section 2 of "the Act" can be applied to persons practicing "beauty culture." This is so because the language of Section 4 is that no provisions of the "Act" can be applied to beauty culturists and certainly the things defined in Section 2 as "barbering" are part of "the Act" which plainly says shall in no part be "construed" to apply to "beauty culture." The language of Section 4 is that "the provisions of the Act (including Section 2) shall not be construed to apply to" *persons practicing* beauty culture.

Now the Legislature has command of its own language when it enacts laws, and highly regulatory and penal laws ought not to be extended by construction.

Obviously the Legislature intended that its enactment of the barber law should expressly exempt not merely the "practice" of beauty culture, but should exempt "persons" practicing beauty culture. In other words, the Legislature intended to exempt a known class of "persons" who practiced beauty culture rather than the art itself, because the

statutory language employs the words "persons practicing beauty culture."

Furthermore, the exemption is not partial but complete. If the "exemption" mentioned in Section 4 of Chapter 14650 is applicable at all to "persons practicing beauty culture" it means that "persons practicing beauty culture" as a known and recognized class of special practitioners are exempt from the whole Act. This is so because Section 4 specifically says that the provisions of "the Act"—meaning the whole of it, not a part of it—shall not apply to "persons practicing beauty culture."

Now what is "beauty culture"? Chapter 14650 does not define it, so we must look to ordinary sources of knowledge for a definition because the Legislature is presumed to have used the term as it is understood in its ordinary sense.

In Volume 3, Encyclopedia Brittanica (1933 Edition), page 281, I find the following definition of "beauty culture," and a discussion of its importance as a national art:

"BEAUTY CULTURE is the science of improving personal appearance. It embraces the care of the skin, the hair, the hands and nails, the teeth and the body, to make them conform to the standard regarded by the current generation as beautiful.

"Since earliest times, cosmetics have played a part in the social life of civilization. Today, specialists in beauty culture employ diet, exercise, hygiene, electricity, X-ray, radium, gland stimulation and gland extracts, water cures, sun-treatments, plastic surgery, massage, osteopathy and mental science to create health and beauty.

"However, hygiene, sunshine, mental science, etc., constitute only a background for the specialized work of the beauty culturist. Largely, and in actual practice, beauty culture is 'the application of cosmetic preparations to the human body by massaging, stroking, kneading, slapping,

tapping, stimulating, manipulating, exercising, cleansing, or by means of devices, apparatus or appliances, and arranging, dressing, marcelling, curling, waving, cleansing, singeing, bleaching, coloring, dyeing, tinting or otherwise treating by any means the hair of any person.' This inclusive definition is quoted from the Illinois law which requires that anyone who practices beauty culture have a certificate of registration."

No doubt the Legislature, recognizing that it was impractical to intermingle the regulation of barber shops and beauty parlors, designedly used the language "beauty culture" for the purpose of eliminating persons who practiced "beauty culture" from the barber Act, even though some of the acts of "beauty culture" would amount to barbering as that term is defined in Chapter 14650.

My view is that under Section 4 of said Chapter 14650, Acts of 1931, "persons practicing beauty culture" are wholly exempt from the barbering law and every part of it, even though they may do some of the things that would, standing alone, be within the definition of "barbering" under Section 2 of the Act. All professions overlap to a degree. A physician may pull a tooth without having a dentist's license. A druggist may administer a dose of Sal Hepatica without being a physician. And so a person "practicing beauty culture" may clip a fair lady's hair without erecting a striped pole outside her beauty shop, because clipping hair, insofar as it is merely an *incident* to the practice of "beauty culture," is a part of "beauty culture" and is not "barbering."

To adopt the view contended for by the respondent in this case simply means that many good women who are now engaged in the profession of "beauty culture" and work single-handed in some little shop of their own where their services are dispensed only to the fair sex, must either hire a barber and open up a barber shop in connection with their

beauty parlors, or else close up shop entirely and become mere "hired hands" in a barber shop. For three years the barbering law has not been construed to interfere with legitimate "beauty culturists." The Legislature foresaw what would happen if no exception were written into the barbering law in favor of persons "practicing beauty culture," so they specifically wrote it in the barbering law. I see no warrant for now judicially legislating to the contrary.

At the same time, while I entertain the views hereinbefore expressed, I concur in the conclusion that the petitioner should be remanded for trial under the affidavit and warrant which charges her with operating a "barber shop." I think a jury should be allowed to decide in a case of this kind whether the lady's shop is really a "barber shop" in disguise, or a *bona fide* shop wherein is practiced "beauty culture."

I do not think it proper to determine such a question on a mere stipulation of facts in a habeas corpus case, as such a stipulation is nothing more than a stipulation to confer jurisdiction on the Supreme Court that it does not possess, namely, trial jurisdiction in a misdemeanor case. This case is unlike Cahoon v. Smith, 99 Fla. 1174, 128 Sou. Rep. 632, and kindred cases where some court or magistrate had already judicially decided against the petitioner on a preliminary hearing before habeas corpus was applied for here. In such cases this Court can still act as a court of review, namely, as a court of review over the magistrate's decision that certain facts constitute a crime whereas they are not in law a crime.

I concur in the conclusion that the petitioner should be remanded.

ELLIS, TERRELL and BROWN, J. J., concur.