91 So.2d 197 (1956)
FLORIDA INDUSTRIAL COMMISSION, Appellant,
v.
MANPOWER, INC. OF MIAMI, Appellee.
Supreme Court of Florida. Special Division B.
December 5, 1956.
Burnis T. Coleman, Tallahassee, for appellant.
Meyer, Weiss, Rosen & Rose, Miami Beach, for appellee.
ROBERTS, Justice.
The issue here is whether the appellee, Manpower, Inc., is a "private employment agency" within the purview of Ch. 449, Fla. Stat. 1955, F.S.A. The appellant, Florida Industrial Commission, which is charged with the duty of administering the Act, ordered Manpower to obtain a license to operate as a private employment agency or to cease and desist in the operation of its business. Manpower then filed suit against the Commission for a decree declaratory of its rights under the Act and for an injunction against the Commission's interference with its business activities. The lower court held that Manpower was not a "private employment agency," within the meaning of Ch. 440, supra, and granted the relief prayed by Manpower. The Commission has appealed.
*198 The essential facts as to Manpower's business activities are not in dispute. The record shows that Manpower and its affiliates operate in thirty-seven cities throughout the country. Each city is operated on an identical basis, subject to control of the home office in Milwaukee, Wisconsin. It provides various types of services for its customers, including, among others, typists, stenographers, comptometer operators, general office workers, bookkeepers, factory workers, dictaphone transcribers, truck helpers, car unloaders, warehousemen, and convention service. Some of the services, such as typing and calculating service, are performed either in the office of Manpower or in the customer's office, at the customer's election. Others, such as direct mail service (typing of envelopes, labels, inserting of materials), research service for advertising and manufacturing concerns, and telephone secretarial service, are performed only in its own office. Manpower also provides a distribution service to national concerns for the distribution of circulars, coupons and samples of products, and a sales service for the sale of products on a coast-to-coast basis. Manpower hires its own employees and sends them to the customer to perform the service required (if to be performed in the customer's office). The customer enters into a contract with Manpower for the particular service to be performed and pays the contract price to Manpower. Manpower pays the employee at a salary agreed upon between Manpower and the employee. All applicants for clerical positions are tested. When an order is received by Manpower for one of its particular services, Manpower decides which employee shall be utilized. Manpower retains control over its employees, and can substitute one employee for another in any particular job. It deducts the withholding tax from the employee's salary, pays the social security tax, carries unemployment and workmen's compensation on each employee, and has its employees bonded. Manpower guarantees to its customers satisfactory performance by Manpower's employees. If work is not satisfactorily performed, it is performed again at Manpower's expense. In the letter sent by Manpower to its customer confirming the order for services, it is stated that "It is mutually agreed that we will not employ your personnel and that you will not employ any of our personnel."
It can thus be seen that Manpower is not an "employment agency" in the sense in which the term is commonly and generally understood. An "employment agency" has been defined to be "one for the brokerage of labor for a fee paid by the applicant for employment or by the prospective employer." McMillan v. City of Knoxville, 139 Tenn. 319, 202 S.W. 65, 66. Or as stated in Garson v. Division of Labor Enforcement, etc., 1949, 33 Cal.2d 861, 206 P.2d 368, 369, "Generally speaking, an employment agency is any person or corporation engaged in the business of finding positions or employment." It is, in a sense, an independent contractor for labor and services; and, as noted, it is not an "employment agency" as we generally think of such agencies.
The Commission contends, however, that the activities of Manpower bring it squarely within the definition of Subsections (1) and (2) of Section 449.01, Fla. Stat. 1955, F.S.A., and that it is thus subject to regulation under the Act. Subsection (1) of Section 449.01, supra, provides that "Any person, firm or corporation, who for hire or for profit, shall undertake to secure employment or help, or * * * offers to secure employment or help, or give information as to where employment or help may be secured, shall be deemed a private employment agent, and be subject to the provisions of this chapter; * * *." (Emphasis added.) And Subsection (2) of Section 449.01, supra, says that "* * * The term `fee' as used in this chapter also means and includes the difference between the amount of money received by any person, who furnishes employees or performers for any entertainment, exhibition, or performance, and the amount paid by the said person receiving said amount of *199 money to the employees or performers whom he hires to give such entertainment, exhibition or performance."
It is true that Manpower "secures" or provides "help" for its customers, so that its activities might fall within the literal meaning of those words of the statute; but, continuing to construe the statute strictly in accordance with its exact wording, it might be added that Manpower does not "undertake" to secure help for its customers  it actually supplies help to them. Manpower has suggested  and we agree  that there are many different services that are provided by various businesses which could be said to be within the literal terms of the Act but which could not, by any stretch of the imagination, be deemed to be "private employment agencies", for example, a court reporter who sends his employee to a law office to take a deposition; a detective agency which sends its employee to guard important documents, or to do work directed by its customer; a painting contractor whose employee paints a room, as directed by the customer; an agency which supplies uniformed guards for banks; a construction firm which rents out its heavy construction equipment, with operators, to perform at the customer's direction; accountants whose employees do bookkeeping service for customers; firms of hotel auditors who send efficiency experts to work in hotels. So the fact that Manpower may be said to "secure help" for its customers is not controlling here. And, by the same token, neither is the definition of "fee", even if it be assumed that the quoted definition applies to other than theatrical agencies, which are expressly regulated by the Act.
We are cognizant of the rule that the administrative interpretation of a statute is entitled to great weight and ordinarily will not be disturbed by this court unless clearly erroneous or unauthorized. Gay v. Canada Dry Bottling Co. of Florida, Inc., Fla. 1952, 59 So.2d 788. But equally binding upon this court is the rule that "highly regulatory and penal laws ought not to be extended by construction." Brown v. Watson, 1934, 116 Fla. 56, 156 So. 327, 330, involving an interpretation of the Florida Barber Law.
It has also been said that "It is now a settled principal of statutory construction that Congress or a legislature in legislating with regard to an industry or activity, must be regarded as having had in mind the actual conditions to which the act will apply, that is, the needs and usages of such activity." Florida Industrial Commission v. Growers Equipment Co., 152 Fla. 595, 12 So.2d 889, 893. So in considering the question of whether an organization such as Manpower is within the reasonable intendment of the Act in question, we have considered "`the needs and usages'" of the activity in question, that is, private employment agencies.
The evils incident to private employment agencies which statutes such as ours were enacted to correct were summarized in a report published by the United States Bureau of Labor in October, 1912 (United States Bureau of Labor Bulletin No. 109, p. 36), as quoted in Adams v. Tanner, 244 U.S. 590, 601, 37 S.Ct. 662, 667, 61 L.Ed 1336, as follows:
"1. Charging a fee and failing to make any effort to find work for the applicant.
"2. Sending applicants where no work exists.
"3. Sending applicants to distant points where no work or where unsatisfactory work exists, but whence the applicant will not return on account of the expense involved.
"4. Collusion between the agent and employer, whereby the applicant is given a few days' work and then discharged to make way for new workmen, the agent and employer dividing the fee.

*200 "5. Charging exorbitant fees, or giving jobs to such applicants as contribute extra fees, presents etc.
"6. Inducing workers, particularly girls, who have been placed, to leave, pay another fee, and get a `better job.'
"`Other evils charged against employment agents are the congregating of persons for gambling or other evil practices, collusion with keepers of immoral houses, and the sending of women applicants to houses of prostitution; sometimes employment offices are maintained in saloons, with the resulting evils.'"
Clearly, the method of operation of Manpower is susceptible to none of the abuses mentioned above, with the possible exception of No. 5, "charging exorbitant fees, * * *." And, equally clearly, any attempts by Manpower to "gouge" its employees by contracting for their services at a rate unreasonably in excess of the salary rate paid to the employee would be unprofitable, since Manpower would soon find itself without employees and thus out of business.
There is no suggestion that Manpower was conceived to avoid the effect of employment agency statutes of this or any other state. It is a legitimate business, performing a new type of service to individuals and firms. In effect, it provides various types of services, on a part-time basis, to customers who would not find it practical to maintain a full-time service of that type in their own concern. Reluctant as we are to interfere with an administrative interpretation of an Act, we have the view that to uphold that interpretation would be to extend the Act by judicial fiat; and this, we are not authorized to do.
Accordingly, the decree appealed from should be and it is hereby
Affirmed.
DREW, C.J., THOMAS, J., and OGILVIE, Associate Justice, concur.