559 So.2d 419 (1990)
Steven C. THOMAS, Appellant,
v.
STATE of Florida, DEPARTMENT OF INSURANCE AND TREASURER, Appellee.
Lori A. THOMAS, Appellant,
v.
STATE of Florida, DEPARTMENT OF INSURANCE AND TREASURER, Appellee.
Nos. 89-02548, 89-02552.
District Court of Appeal of Florida, Second District.
April 11, 1990.
*420 Thomas F. Woods of Gatlin, Woods, Carlson and Cowdery, Tallahassee, for appellants.
Robert V. Elias, Tallahassee, for appellee.
ALTENBERND, Judge.
Steven Thomas and his sister, Lori Thomas, appeal final administrative orders which suspend their insurance licenses. They maintain that the Department of Insurance failed to prove, by clear and convincing evidence, that their respective insurance agencies were engaged in unlawful insurance practices that warranted one-year suspensions of their licenses as general lines agents. We disagree and affirm the administrative orders.
In March 1989, the Department of Insurance filed administrative complaints against Steven Thomas and Lori Thomas. Steven Thomas was the general lines agent in charge of the office of Mr. Auto Insurance of St. Petersburg, Inc. Lori Thomas was the general lines agent in charge of the office of Mr. Auto Insurance of Clearwater, Inc. The complaints alleged violations of the insurance code during 1987. The Department alleged that both agencies had employed the same sales artifice with numerous customers. At the final hearing, the Department presented evidence concerning insurance transactions with eight separate customers who had obtained auto insurance from one agency or the other.
Although the customers' transactions differ in unimportant detail, the typical scenario is summarized as follows: Each customer came to the agency or called on the telephone and asked about the most economical policy of auto insurance which he or she could buy to comply with the requirements of Florida law. The employees of the agencies would advise the customers that a six-month insurance policy, providing only personal injury protection (PIP) coverage, could be obtained for $65. Apparently, this price was very competitive.
When the customer decided to purchase the insurance, the agency prepared an extensive application form, and the customer was required to sign or initial the form twelve times. The customer's signatures, scattered throughout the form, confirmed that he or she was rejecting various coverages.[1] At the end of the application, the customer's signature appeared immediately below a paragraph which stated, "I certify that I have read, had explained, and understand all of the above which I have initialed and signed."
Along with the rejections of various coverages, the customer signed an "election of accidental death and/or motor club towing coverage." This election explained that $30 of the "premium" paid to Mr. Auto would be used to purchase motor club "coverage," which is a "separate item that provides additional benefits for myself and for my designated beneficiary." A separate page of the application, entitled "Confirmation," "certifies" that the customer is now a member in good standing of Colonial Touring Association, Inc., and "entitled to all the services, benefits and privileges applied for as shown on the membership application (Form CTA246)."
Form CTA246 is another form which was signed by the customer. It is quite brief and the only service, benefit or privilege which is apparent from the form is a $6,000 "amount of insurance," which presumably is paid to the person described as "beneficiary" on the form. Except for the fact that the form is entitled, in part, "auto accidental death coverage," there is no indication of when, why, or how Colonial Touring *421 might bestow this benefit upon the named beneficiary.[2]
It is clear from the evidence that the Thomases and their respective staffs did not orally explain to the customer that this membership was optional and was not part of the insurance coverage requested by the customer. The agents of Mr. Auto did not tell their customers that they could save roughly 40% of the total price by declining this opportunity to become a member in good standing of the touring club. Despite the language of the application, which referred to premiums and coverage, the agents of Mr. Auto did not inform the customer that the membership was not actually life or auto insurance. The agents did not suggest that the customer use this money to buy an actual insurance policy with a smaller deductible or more complete coverage. The customers did not realize they were buying the touring club membership as well as the requested insurance. One must surely suspect that the Thomases inserted this touring club membership into their form application because Colonial Touring paid the Thomases a $27 commission on the $30 membership fee. Whatever benefit Colonial Touring provided to the customer, it did so for $3.[3]
The Thomases argue that no violation of the insurance code is proven in this case because the application forms, if read with care, explain that the customer is paying $30 of the $65 for the membership fee rather than for the requested insurance. They rely on Vasquez v. Bankers Insurance Co., 502 So.2d 894 (Fla. 1987), for the proposition that one who signs an insurance form cannot generally escape the consequences of one's signature by alleging that the form was not read or understood. The Vasquez decision, however, concerns an insured's contractual relationship with his or her insurance company. It does not concern the customer's relationship with the insurance agent or the agent's statutory responsibilities to the customer and the general public.
The purpose of the state's license for a general lines agent is "to authorize and enable the licensee actively and in good faith to engage in the insurance business as such an agent or solicitor with respect to the general public and to facilitate the public supervision of such activities in the public interest." § 626.730(1), Fla. Stat. (1985). To regulate this public purpose, the Department is authorized to conduct inquiries concerning improper conduct by any licensed agent and to suspend licenses for various statutorily established grounds. §§ 626.601, 626.611, Fla. Stat. (1985).
In this case, the Department alleged, and the hearing officer found, that the Thomases had violated the insurance code because the above-described conduct: constituted willful deception with regard to an insurance policy or contract;[4] demonstrated a lack of fitness or trustworthiness to engage in the business of insurance;[5] constituted a dishonest practice in the conduct of business under the license;[6] and constituted a source of injury or loss to the public and was detrimental to the public interest.[7] These legal conclusions are based upon a correct interpretation of the applicable statutes, are supported by substantial competent evidence, and have been reached under *422 the correct burden of proof. See § 120.68, Fla. Stat. (1985); Ferris v. Turlington, 510 So.2d 292 (Fla. 1987).
Affirmed.
LEHAN, A.C.J., and PARKER, J., concur.
NOTES
[1] The customer rejected full PIP coverage and selected a $2,000 deductible which applied to the named insured and each relative. All uninsured motorist coverage was rejected. All basic property protection and collision insurance was rejected.
[2] The form does provide Colonial Touring's address at 499 State Road 434, Suite 2039, Altamonte Springs, Florida 32714. Perhaps the member could obtain more information by contacting the corporation's president, Donald Robinson, at the business address.
[3] In fairness to the Thomases and other agents who specialize in PIP-only automobile insurance policies, the insurance industry may have placed them in a dilemma. Mr. Thomas testified that his commission for the $35 PIP insurance policy was $9. He bluntly explained that he could not stay in business if he collected only the premium for the insurance policy. Even with the deceptive practice, he believes that his agency is the "best deal going in town" for the customer who is an undesirable insurance risk. If this is true, it may behoove the insurance commissioner to assure that insurance agents can receive a reasonable premium for high-risk, low-benefit insurance policies without engaging in deception.
[4] § 626.611(5), Fla. Stat. (1985).
[5] § 626.611(7), Fla. Stat. (1985).
[6] § 626.611(9), Fla. Stat. (1985).
[7] § 626.621(6), Fla. Stat. (1985).