982 So.2d 94 (2008)
Paula Evelyn BECKETT, Appellant,
v.
DEPARTMENT OF FINANCIAL SERVICES, Appellee.
No. 1D07-2831.
District Court of Appeal of Florida, First District.
May 12, 2008.
*96 L. Michael Billmeier, Jr., and Clyde W. Galloway, Jr., of Galloway, Brennan & Billmeier, Tallahassee, for Appellant.
James A. Bossart, Division of Legal Services, Tallahassee, for Appellee.
LEWIS, J.
Paula Evelyn Beckett, Appellant, seeks review of an Amended Final Order of the Department of Financial Services ("the Department"), which suspended her insurance license for twelve months. Appellant contends the Department erred in accepting the Administrative Law Judge's ("ALJ") finding that she sold ancillary insurance products without obtaining her customers' informed consent, a practice known as "sliding" and labeled an unfair or deceptive practice under section 626.9541(1)(z)3, Florida Statutes (2004). Appellant further contends the Department erred in rejecting or modifying the ALJ's finding that the Department did not prove by clear and convincing evidence that she had demonstrated a lack of fitness or trustworthiness to engage in the business of insurance pursuant to section 626.611(7), Florida Statutes (2004), or had engaged in fraudulent or dishonest practices pursuant to section 626.611(9), Florida Statutes (2004). Because there was no error in the ALJ's findings, we affirm the Department's order in part, reverse it in part, and remand with directions that the *97 Department reconsider Appellant's penalty.
The instant action began when the Department filed an administrative complaint, alleging that Appellant sold ancillary insurance products to three customers without their informed consent and that her actions constituted grounds for suspension or revocation of her license under sections 626.611 and 626.621(6), Florida Statutes (2004). Appellant and the three customers testified at an administrative hearing. The customers' signed insurance application materials were admitted into evidence. These materials revealed that all three of the customers had purchased an optional accident protection plan and that one of the customers had also purchased an optional travel protection plan.
The accident protection plan application contains two signature lines, one indicating acceptance of the coverage and one indicating rejection. Each of the customers who testified signed the line indicating acceptance of the accident protection plan. There are several lines of italicized print above the signature line. One of those lines reads, "I am electing to purchase an optional coverage that is not required by the State of Florida."
The customer who purchased the travel protection plan signed a form entitled "American Bankers Insurance Company Optional Travel Protection Plan." The title of this form is in bold lettering, and the words "Optional Travel Protection Plan" are underlined. This form also contains the statement, "Purchasing the Optional Travel Protection Plan is not a condition of purchasing your automobile liability policy." This statement is printed just a few lines above the signature line.
Each of the three customers who testified also signed a form titled "Insurance Premium Financing Disclosure Form," which categorizes the coverages as "Insurance you are REQUIRED by law to have," "Other insurance which you MAY be required by law to have," and "OPTIONAL insurance coverage." (emphasis in original). On each of these forms, the travel protection plan and hospital indemnity, are listed as optional coverage, along with several other items. There is a price next to each item. If the coverage is not being purchased, the price is listed as "$0." There is a price of $110 next to hospital indemnity on each of these forms, and a price of $60 for the travel protection plan on the form for the customer who purchased this coverage. None of the language quoted in this paragraph is printed in particularly small print on the forms, and it is not buried in the middle of a long paragraph.
Additionally, each customer signed a handwritten document known as a "pen sheet," although none of them remembered doing so. At the top of each pen sheet, the phrase "Mandatory Cov" is written. Immediately below those words appear the acronyms "PIP" and "PD," with brief descriptions and prices. Immediately below "PIP" and "PD" appears the phrase "optional cov," with a list of various coverages below. Many of the items listed as optional coverages are crossed out, but the words "med plan" and "rental" appear as optional coverage on each pen sheet. On one of the pen sheets appears the phrase "FLA TAG INS. ONLY" (emphasis in original). This phrase is circled, underlined, and marked with an asterisk.
The three customers all gave essentially the same testimony regarding their transactions with Appellant. Specifically, they testified that they had approached Appellant and requested the minimum auto insurance to satisfy the requirements of Florida law. One customer testified that she also requested "comp[rehensive] and collision" insurance because her vehicle *98 was financed. The customers testified that they left Appellant's office with the understanding that they had purchased only the insurance they requested and that they did not realize they had purchased additional, optional insurance coverage until one of the Department's investigators contacted them.
Each of the customers testified that the application process was quick. One customer admitted to having been "in a rush to leave," and another customer testified that Appellant seemed to be "in a bit of a hurry." The customers recalled that Appellant gave them the application materials and asked them to sign in several places. One customer testified that Appellant's description of the paperwork "was, basically, `Sign it here.'" They all testified that they had signed the insurance application materials without reading them. Each of the customers was certain that if Appellant had told her the additional coverage she purchased was optional, she would not have purchased it.
Appellant testified that although she did not specifically remember her transactions with the three customers who testified, she has a general routine she follows when selling auto insurance. She testified that she always includes the accident medical protection plan in an initial quote, even if the customer has not requested it. She further testified that she sometimes includes the travel protection plan, which is also known as rental coverage, in the quoted price. Appellant admitted she typically does not inform the customers that the accident medical protection plan is included in the initial quote but that she goes over the handwritten pen sheet orally with each customer "exactly the way it's written." Appellant further testified that most of her customers do not understand insurance but that she explains each coverage to them. She provided examples of the explanations she would give to a typical customer. Appellant also testified that she does not prevent customers from reading the paperwork they sign and is willing to answer any questions they may have.
After the hearing, the ALJ issued a Recommended Order, specifically finding that the customers' testimony regarding their transactions with Appellant was credible. The ALJ also found that Appellant's routine explanation of the insurance coverages was "somewhat superficial," even though she knew most of her customers did not understand insurance and did not fully review the application materials. He further found that Appellant sometimes deviated from her routine. The ALJ noted that the documents relating to the travel protection plan and the accident medical protection plan were clearly labeled and that "[a] person of normal intelligence would be able to read the labels and probably ascertain that such plans were optional coverages." However, the ALJ further found that "such [a] person would need to be able to distinguish and differentiate between the minimal insurance coverage documentation and the documents addressing additional coverage . . . [and] would probably need to anticipate the inclusion of ancillary products. . . ." The ALJ made the additional finding that while Appellant did not prevent customers from thoroughly reading the application materials, she also did not encourage them to do so and that while she would respond to questions, she would not offer unsolicited information that might help the customers better understand their purchases. The ALJ found that it was unlikely that the customers had taken the time or made the effort to read the application materials thoroughly. Instead, the ALJ found, they seemed to rely on Appellant to provide them the coverage they requested. Notably, the ALJ found that Appellant "intentionally provided [the customers] more than they asked for, leaving *99 it to them to distinguish the coverages."
Ultimately, the ALJ found that the Department had failed to prove that Appellant had demonstrated a lack of fitness or trustworthiness to engage in the business of insurance or that she had committed fraudulent or dishonest practices within the meaning of section 626.611. Accordingly, the ALJ concluded that there was no basis for a compulsory suspension or revocation of Appellant's license. In the next sentence of the Recommended Order, the ALJ emphasized that "[t]he question is whether [Appellant] added ancillary products to the three aggrieved customers' orders without their informed consent." The ALJ then noted that, under Thomas v. State of Florida, Department of Insurance and Treasurer, 559 So.2d 419 (Fla. 2d DCA 1990), it was his duty to determine whether Appellant's explanation was sufficient to render the customers' consent "informed." As to this issue, the ALJ found that, based on the evidence presented, it was clear that the aggrieved customers were not "fully made aware of the additional products they purchased." The ALJ went on to find, "Although [Appellant] did not fraudulently misrepresent the quotes she provided to each customer, she did not effectively inform them as to ancillary products contained in the insurance documents." Accordingly, the ALJ found that the Department had sufficiently proven sliding. He recommended a sixty-day suspension of Appellant's license.
The Department issued an Amended Final Order, accepting the finding that Appellant had engaged in sliding but rejecting the finding that the Department had not proven the violations of section 626.611. In rejecting this finding, the Department ruled that the ALJ had failed to follow "the essential requirement of law that inferior tribunals must follow the applicable precedent of superior tribunals." The Department then opined that under Thomas, the ALJ was required to find violations of section 626.611(7) and (9) because the insurance transactions in the instant case were indistinguishable from the transaction in Thomas, and the Thomas court upheld findings that the appellants had violated those statutory sections. The Department ruled that because the ALJ found "intentional wrongdoing" by Appellant, her actions constituted violations of sections 626.611(7) and (9). The Department opined that the ALJ had reached conflicting conclusions and that the ALJ had ruled that an agent who intentionally engages in sliding "is nonetheless fit and trustworthy to hold an insurance license, and that intentional sliding is not dishonest." The Department further concluded that sliding is a per se violation of section 626.611(7). In consideration of the modified factual findings, the Department suspended Appellant's license for twelve months, rather than the sixty days recommended by the ALJ.
The Department properly concluded that the ALJ's determinations that Appellant had engaged in sliding but had not violated the provisions of section 626.611 were factual findings. See J.J. Taylor Cos., Inc. v. Dep't of Bus. & Professional Regulation, Div. of Alcoholic Beverages & Tobacco, 724 So.2d 192, 193 n. 2 (Fla. 1st DCA 1999). However, it must be noted that a finding regarding whether a person has violated a statutory provision depends upon a proper interpretation of the provision. See Whitaker v. Dep't of Ins. & Treasurer, 680 So.2d 528, 530, 532 (Fla. 1st DCA 1996) (reversing a finding that an insurance agent had refused to insure applicants because the finding could not withstand a proper construction of the statutory definition of "refusal to insure"). The proper interpretation of the term "informed *100 consent" is at issue in this appeal. Therefore, we first consider whether the ALJ and the Department properly interpreted that term and then whether the ALJ's findings as to each relevant provision were treated appropriately in the Department's Amended Final Order.
Although agencies typically have wide discretion in interpreting statutes they administer, "this discretion is somewhat more limited where the statute being interpreted authorizes sanctions or penalties against a person's professional license." Elmariah v. Dep't of Prof'l Regulation, Bd. of Med., 574 So.2d 164, 165 (Fla. 1st DCA 1990). Such statutes "are deemed penal in nature and must be strictly construed, with any ambiguity interpreted in favor of the licensee." Id. In particular, agencies are not permitted to extend the requirements of such statutes by construction. Capital Nat'l Fin. Corp. v. Dep't of Ins. & Treasurer, 690 So.2d 1335, 1337 (Fla. 3d DCA 1997). This restriction on agency discretion is necessary to ensure that those whose conduct is regulated by such statutes have fair notice of what conduct is proscribed. Id. (quoting Fla. Indus. Comm'n v. Manpower, Inc. of Miami, 91 So.2d 197, 199 (Fla.1956) and City of Miami Beach v. Galbut, 626 So.2d 192, 194 (Fla.1993)).
The first statute at issue in this case is section 626.9541(1)(z), which defines "sliding" and categorizes it as an unfair method of competition or an unfair or deceptive act. An insurance agent can engage in sliding in three distinct ways. See § 626.9541(1)(z). The statutory definition of sliding relevant to this appeal is "[c]harging an applicant for a specific ancillary coverage or product, in addition to the cost of the insurance coverage applied for, without the informed consent of the applicant." § 626.9541(1)(z)3. Chapter 626 does not provide a definition of "informed consent" or prescribe particular procedures for an insurance agent to follow to ensure that he or she has obtained a customer's informed consent. According to principles of statutory construction, however, when terms are not defined in a statute, "the plain and ordinary meaning of those terms applies." Nat'l Fed'n of Retired Persons v. Dep't of Ins., 553 So.2d 1289, 1290 (Fla.1st DCA 1989). Additionally, it is appropriate to consider other statutory provisions and relevant case law to give a statutory term its proper meaning. DuFresne v. State, 826 So.2d 272, 275 (Fla.2002).
The Second District's decision in Thomas v. State, Department of Insurance and Treasurer, 559 So.2d 419 (Fla. 2d DCA 1990), provides guidance as to the proper meaning of "informed consent" in the context before us, although it does not expressly construe the meaning of section 626.9541(1)(z)3. The Thomas decision concerns the actions of two insurance agents ("the Thomases"), who sold ancillary insurance products without providing their customers with an adequate warning that the ancillary products were optional and not a part of the insurance coverage they had requested. See Thomas, 559 So.2d at 420-21. When the Thomases committed these violations of the insurance code, there was not yet a statutory definition or an express statutory prohibition of sliding. See id. (noting that the Department of Insurance had alleged the violations occurred in 1987); § 626.9541(1), Fla. Stat. (1987) (ending in subsection (x), "Refusal to insure"). However, in consideration of several other penal subsections of Chapter 626, the Department of Insurance and the Second District Court of Appeal found that their actions constituted a breach of their statutory duties to their customers and the general public. Thomas, 559 So.2d at 421.
*101 The Thomas court noted that different considerations apply to a court's determination of whether an insurance agent has violated her statutory duties and to the separate determination of whether an insured is bound by the contract she signs with the insurance company. Thomas, 559 So.2d at 421 (distinguishing Vasquez v. Bankers Ins. Co., 502 So.2d 894 (Fla.1987)). We agree with this position and further note that a recognition that an insurance agent stands in a fiduciary relationship to her customers should enter into an evaluation of whether the agent has carried out those duties. See Natelson v. Dep't of Ins., 454 So.2d 31, 32 (Fla. 1st DCA 1984). The fiduciary responsibility an insurance agent has to her customers explains why the agent cannot merely give forms to a customer, ask for a signature, and wash her hands of the matter. Whether the agent has made an appropriate effort depends on the facts and circumstances of the particular case and is a question of fact.
Appellant contends that the term "informed consent," as applied in the instant case, is unconstitutionally vague. A statute is unconstitutionally vague if it does not, on its face, give a person of ordinary intelligence fair notice of what conduct is forbidden. Accelerated Benefits Corp. v. Dep't of Ins., 813 So.2d 117, 120 (Fla. 1st DCA 2002). The standard governing this determination is more specific for an as-applied challenge. In this situation, the proper inquiry is "whether the statute can be fairly used to proscribe the defendant's [or respondent's] conduct, and the result is not binding on other parties." Id. (citations omitted). Whenever possible, courts must construe statutes as constitutional. Indus. Fire & Cas. Ins. Co. v. Kwechin, 447 So.2d 1337, 1339 (Fla.1983).
We do not agree with Appellant that the sliding definition was applied to her unfairly. We find that the sliding prohibition was appropriately applied to Appellant's conduct because we do not read the Department's order as requiring any particular oral representation or other procedure for obtaining informed consent. To the extent that the Department's order or the Thomas decision can be read as requiring, in all circumstances, that insurance agents provide an oral assurance to customers that ancillary products are optional, we reject that interpretation of the informed consent requirement. If the Legislature had intended to require particular means or procedures for obtaining informed consent, it could have done so. See, e.g., § 390.0111(3)(a), Fla. Stat. (2007) (specifying that physicians must provide oral and written information to satisfy the requirement that abortions be performed only with "voluntary and informed written consent"). For the Department to impose upon Appellant a specific procedure to follow to ensure that she has received informed consent from her customers would be an extension of the statute by construction, which is improper. See Capital Nat'l Fin. Corp. v. Dep't of Ins. & Treasurer, 690 So.2d 1335, 1337 (Fla. 3d DCA 1997). As drafted, section 626.9541(1)(z)3 does not legislate how the informed consent must be gathered.
At the same time, we recognize that in most circumstances, it would be difficult for an insurance agent to ascertain whether a customer understands the optional nature of the products without oral communication. The ALJ's findings demonstrate that Appellant was guilty of sliding, not because she failed to utter certain words or because the written materials were unclear, but because she took no steps to ensure that the customers understood the materials. The finding of sliding is supported by the particular facts of this case, which reflect that Appellant neither *102 encouraged her customers to read the application materials, nor gave them an oral indication that the products were optional, all the while knowing that, in general, insurance customers do not tend to understand insurance or read the explanatory materials. In a proper case, the written materials Appellant used could be deemed sufficient to guarantee that the customers gave informed consent. In the instant case, the ALJ essentially found that the surrounding circumstances showed that the written materials were not effectively used to obtain informed consent. This finding is supported by competent, substantial evidence. Accordingly, we affirm the portion of the Amended Final Order adopting the ALJ's finding that Appellant engaged in sliding in violation of the insurance code.
Turning now to the Department's rejection of the ALJ's finding that the Department failed to prove a violation of section 626.611, we conclude that the Department improperly substituted its judgment for that of the fact-finder. In rejecting the ALJ's finding, the Department noted that, under section 120.57(1)(l), Florida Statutes (2006), there are only two circumstances under which an agency may reject or modify an ALJ's factual finding: where the finding is not supported by competent, substantial evidence or where "the proceedings on which the findings were based did not comply with the essential requirements of the law." The Department's order reflects an understanding of the competent, substantial evidence standard, but it reflects a misunderstanding of the second basis for rejecting factual findings. Under section 120.57(1)(l), an agency may reject a factual finding only if it is not supported by competent, substantial evidence or if there was a procedural irregularity in the proceedings before the ALJ. See Brogan v. Carter, 671 So.2d 822, 823 (Fla. 1st DCA 1996). Of course, as this Court has recently observed, when the finding of fact under review is that a party did not carry his or her burden of proof, the finding cannot be reviewed for competent, substantial evidence. Fitzgerald v. Osceola County Sch. Bd., 974 So.2d 1161, 1164 (Fla. 1st DCA 2008); Mitchell v. XO Comm'ns, 966 So.2d 489, 490 (Fla. 1st DCA 2007). In any event, in this case, the Department did not rule that the ALJ's findings were not supported by competent, substantial evidence. Instead, it ruled that the ALJ had failed to comply with the essential requirements of the law. Because there has been no suggestion of a procedural irregularity, the Department's ruling on this point was erroneous.
Section 120.57(1)(l) places agencies in a peculiar position when they are called upon to review an ALJ's finding that a statutory provision has been violated. Case law makes clear that a statement that a statutory violation has occurred is a factual finding. See J.J. Taylor Cos., Inc. v. Dep't of Bus. & Professional Regulation, Div. of Alcoholic Beverages & Tobacco, 724 So.2d 192, 193 n. 2 (Fla. 1st DCA 1999). However, the legitimacy of such a finding necessarily depends on a proper interpretation of the statute. Section 120.57(1)(l) permits agencies to reject or modify conclusions of law, but it further provides that "[r]ejections or modification of conclusions of law may not form the basis for rejection or modification of findings of fact." The Legislature has not placed the same restriction on reviewing courts. If this Court finds that an "agency has erroneously interpreted a provision of law[,] and a correct interpretation compels a particular action," it may set aside agency action on that basis. § 120.68(7)(d). Thus, this Court may consider whether the agency or an ALJ properly interpreted a governing statute in order to effectively review whether the finding of a violation or *103 non-violation of the statute should be upheld.
In this case, the ALJ did not provide an explicit interpretation of sections 626.611(7) and (9). Instead, he simply found that the Department had not met its burden of proof with respect to the alleged violations of these statutory sections. In disagreeing with this finding, the Department opined that sliding, under the definition in section 626.9541(1)(z)3, is a per se violation of section 626.611(7). The Department further opined that Appellant's actions were indistinguishable from the actions discussed in Thomas, and that because the Thomas court upheld a finding that the agents had violated section 626.611(9), the ALJ should have reached the same finding. We disagree with the Department on both points and hold that the ALJ properly found that the Department failed to carry its burden of proof as to the alleged violations of section 626.611.
When an insurance agent engages in sliding, the Department has discretion over whether to take action against the agent's license. § 626.621. In contrast, when an insurance agent has demonstrated a lack of fitness or trustworthiness to engage in the business of insurance, under section 626.611(7), the Department is required to either suspend or revoke the agent's license. This statutory distinction indicates that the Legislature recognized that some instances of sliding would not rise to the level of a demonstration of unfitness or untrustworthiness. While an instance of sliding may satisfy the demonstration prohibited under section 626.611(7), sliding is not a per se demonstration of unfitness or untrustworthiness.
The instant case provides a good example of the fine-line distinction between section 626.9541(1)(z)3 and section 626.611(7). While Appellant failed in her duty to inform her customers that some of the products they were purchasing were not required by law, the ALJ's findings reflect that he was convinced she had not intentionally misrepresented the nature of the products or intentionally prevented the customers from discovering the truth. In opining that Appellant violated section 626.611(9), the Department misconstrued one of the ALJ's findings as stating that Appellant engaged in "intentional wrongdoing." In fact, a review of the ALJ's Recommended Order reveals that he never used this phrase. Instead, the ALJ found that Appellant had intentionally provided her customers with more coverage than they requested and had left it to them to distinguish between the different types of coverages offered. The act of intentionally providing ancillary products is not, in and of itself, a violation of any statute, and it does not necessarily constitute "wrongdoing," if the agent goes on to explain to the customers that optional coverages are included in the package. Notably, the ALJ focused on Appellant's failure to "effectively inform" her customers regarding the ancillary products. A finding that Appellant had intentionally engaged in sliding would have been inconsistent with a finding that she had not demonstrated unfitness and untrustworthiness. However, because the ALJ did not make such a finding, there was no error in his ruling that the Department had not shown a violation of section 626.611(7).
Finally, the ALJ's finding as to section 626.611(9) does not conflict with the other findings represented in the Recommended Order or the Second District's opinion in Thomas. The forms used in Thomas appear to have been much more confusing than the forms used in the instant case. See Thomas, 559 So.2d at 420-21. The Thomas forms contained an "election of accidental death and/or motor club towing coverage" in the midst of various coverage *104 rejections. Id. at 420. The forms characterized this coverage only as a "separate item that provides additional benefits." Id. From the excerpts revealed in the Thomas opinion, it appears that the word "optional" was never used in the forms or in any oral explanations by the agents. Id. at 420-21. Appellant's actions were distinguishable. The forms she used were more clear, and the ALJ reasonably found, after listening to live testimony from Appellant and her customers, that she had not engaged in fraud or dishonesty.
Because the ALJ did not depart from the essential requirements of the law, and there was otherwise no error in the finding that the Department failed to prove violations of section 626.611, this finding should not have been disturbed. Therefore, we reverse the portion of the Amended Final Order that modifies this finding. Finally, because the twelve-month suspension of Appellant's license was predicated, in part, on violations that did not occur, the case must be remanded to the Department for reconsideration of the appropriate penalty. See Werner v. State, Dep't of Ins. & Treasurer, 689 So.2d 1211, 1214-15 (Fla. 1st DCA 1997). Accordingly, the Amended Final Order is AFFIRMED in part, REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.
BROWNING, C.J., and HAWKES, J., concur.